# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

Minnesota Chapter of Associated Builders and Contractors, et. al.

Appellees

v.

Keith M. Ellison, et. al.

Appellants

On Appeal from the United States District Court
for the District of Minnesota (0:24-cv-00536-KMM)

Honorable Katherine M. Menendez, District Judge

## APPELLEES' BRIEF ON APPEAL

Thomas R. Revnew, MN Bar No. 0295620
trevnew@littler.com
Kurt J. Erickson, MN Bar No. 158380
kerickson@littler.com
Jacob D. Multer, MN Bar No. 0401877
jmulter@littler.com
LITTLER MENDELSON, P.C.
1300 IDS Center
80 South 8th Street
Minneapolis, Minnesota  55402.2136
Telephone: 612.630.1000
Facsimile:  612.630.9626

Attorneys for Plaintiffs-Appellees

## SUMMARY OF CASE AND REQUEST FOR ORAL ARGUMENT

Appellees sued Minnesota Governor Timothy James Walz, Minnesota Attorney General Keith Ellison, and Minnesota Department of Labor and Industry Commissioner Nicole Blissenbach, seeking a declaration that Minn. Stat. § 181.531 (the "Act") violates Appellees' rights guaranteed to them under the First Amendment, and is preempted by the National Labor Relations Act.

The Act prohibits employers from speaking to employees regarding broadly defined "religious" and "political" matters. Defendants-Appellants have the ability to, have threatened to, and indeed have actually enforced the Act. By virtue of their retained power, threats of enforcement and actual enforcement, Defendants-Appellants forfeited their Eleventh Amendment sovereign immunity. Governor Walz has made numerous public threats to vigorously enforce the Act, while his appointee (whom he retains authority to direct), Commissioner Blissenbach, is statutorily required to, and in fact currently is, enforcing the Act. Attorney General Ellison, for his part, undisputedly retains power to enforce the Act, and indeed, is statutorily required to do so. The district court properly concluded that each Defendant-Appellant fell within the *Ex parte Young* exception to sovereign immunity.

Oral argument is appropriate because of the important issues presented here, and Appellees request oral argument of 15 minutes per side in St. Paul, Minnesota.

i

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 26.1 and Eighth Circuit Rule 26.1A, Appellees state:

Appellee Laketown Electric Corporation does not have a parent corporation and there are no publicly held corporations owning 10% or more of its stock.

Appellee Minnesota Chapter of Associated Builders and Contractors, Inc. does not have a parent corporation and there are no publicly held corporations owning 10% or more of its stock.

Appellee National Federation of Independent Business, Inc. does not have a parent corporation and there are no publicly held corporations owning 10% or more of its stock.

# TABLE OF CONTENTS

SUMMARY OF CASE AND REQUEST FOR ORAL ARGUMENT..........i

CORPORATE DISCLOSURE STATEMENT............................................. ii

TABLE OF CONTENTS ........................................................................... iii

STATEMENT OF ISSUES ........................................................................ix

STATEMENT OF THE CASE ....................................................................1

I.    MINNESOTA ENACTS A LAW THAT RESTRICTS EMPLOYER FREE-SPEECH RIGHTS...............................................................1

    A.    Appellees Challenge The Act As Violating The United States Constitution And Being Preempted Under The National Labor Relations Act. .......................................................................2

    B.    Appellants' Motion To Dismiss Is Properly Denied By The District Court...................................................................4

        1.    The district court reviewed applicable case law prior to ruling from the bench................................................5

        2.    After reviewing applicable case law, the district court found Governor Walz has a connection to enforcing the Act and is threatening to enforce the Act. .................7

        3.    After reviewing applicable case law, the district court found Commissioner Blissenbach has a connection to enforcing the Act and is enforcing the Act. ..............8

        4.    After reviewing applicable case law, the district court found Attorney General Ellison has a connection to enforcing the Act and the threat is imminent............................9

SUMMARY OF ARGUMENT..................................................................10

ARGUMENT.........................................................................................13

I.   THE DISTRICT COURT CORRECTLY CONCLUDED THAT GOVERNOR WALZ AND COMMISSIONER BLISSENBACH HAVE A CONNECTION TO THE ENFORCEMENT OF THE ACT UNDER EX PARTE YOUNG ..................................................................13

  A.   Governor Walz's Ability To Remove And Appoint The DOLI Commissioner And Employ Private Counsel In Place Of The Attorney General Gives Him The Ability To Enforce The Act.........14

  B.   Commissioner Blissenbach Is Statutorily Required To Enforce The Act, And Is Already Doing So ....................................................19

    1.   The Commissioner is already enforcing the Act. ....................19

    2.   The law provides the Commissioner with numerous methods to enforce the Act. .....................................................22

II.  THE DISTRICT COURT CORRECTLY FOUND APPELLEES HAVE MET THE SECOND PRONG OF THE EX PARTE YOUNG ANALYSIS...................................................................................25

  A.   That Appellants May Take Enforcement Action Against Appellees Is Enough To Satisfy *Ex Parte Young*'s Second Prong .............................................................................................25

  B.   Regardless, The District Court Correctly Concluded That Appellants Are Enforcing, Will Enforce, And Must Enforce The Act ........................................................................................29

    1.   Commissioner Blissenbach is enforcing, and must enforce, the Act. .....................................................................29

    2.   Governor Walz has demonstrated a clear willingness to harshly enforce the Act. ...........................................................30

    3.   Attorney General Ellison is statutorily required to enforce the Act. ....................................................................32

  C.   The District Court's Ruling Properly Decided The Jurisdictional Issue.....................................................................34

III. CONCLUSION..............................................................................35

CERTIFICATE OF COMPLIANCE ...........................................................38

CERTIFICATE OF SERVICE.................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*281 Care Comm. v. Arneson*,
   766 F.3d 774 (8th Cir. 2014) ................................................1, 17, 34

*281 Care Comm. v. Arneson* (*Care Committee I*),
   638 F.3d 621 (8th Cir. 2011) ...........................................................26

*Allied Artists Picture Corp. v. Rhodes*,
   679 F.2d 656 (6th Cir. 1982) ...........................................................32

*Arkansas Right to Life State Pol. Action Comm. v. Butler*,
   146 F.3d 558 (8th Cir. 1998) ...........................................................31

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*,
   729 F.3d 937 (9th Cir. 2013) ........................................................2, 36

*Balogh v. Lombardi*,
   816 F.3d 536 (8th Cir. 2016) ......................................................19, 20

*Church v. Missouri*,
   913 F.3d 736 (8th Cir. 2019) ......................................................19, 20

*Coal. to Defend Affirmative Action v. Brown*,
   674 F.3d 1128 (9th Cir. 2012) .....................................................2, 36

*Courthouse New Serv. v. Gilmer*,
   48 F.4th 808 (8th Cir. 2022) ...........................................................16

*Digit. Recognition Network, Inc. v. Hutchinson*,
   803 F.3d 952 (8th Cir. 2015) ...................................................1, 18, 21

*Doe v. DeWine*,
   910 F.3d 842 (6th Cir. 2018) ........................................................2, 12

*First Nat'l Bank of Boston v. Bellotti*,
   435 U.S. 765 (1978), App. 21 ............................................................5

*Jones v. Jegley*,
   947 F.3d 1100 (8th Cir. 2020) ..................................................*passim*

*Mi Familia Vota v. Ogg,*
105 F.4th 313 (5th Cir. 2024) ...............................................................27

*Minnesota RFL Republican Farmer Lab. Caucus v. Freeman,*
33 F.4th 985 (8th Cir. 2022) .......................................................16, 30

*Nat'l Audubon Soc'y, Inc. v. Davis,*
307 F.3d 835 (9th Cir. 2022), *opinion amended on denial of reh'g,*
312 F.3d 416 (9th Cir. 2002) ...............................................................36

*NRA of America, v. Vullo,*
602 U.S. 175 (2024)......................................................................8, 25

*Pocatello Educ. Ass'n v. Heideman,*
123 F. App'x 765 (9th Cir. 2005) ......................................................27

*Reprod. Health Servs. Of Planned Parenthood of St. Louis Region,*
*Inc. v. Nixon,*
428 F.3d 1139 (8th Cir. 2005) .......................................................27, 36

*Telescope Media Grp. v. Lucero,*
936 F.3d 740 (8th Cir. 2019) ...............................................................31

*Universal Life Church Monastery Storehouse v. Nabors,*
35 F.4th 1021 (6th Cir. 2022) .......................................................2, 36

*Whole Woman's Health v. Jackson,*
595 U.S. 30 (2021).................................................................*passim*

*Worth v. Jacobson,*
108 F.4th 677 (8th Cir. 2024) ...............................................2, 23, 24

*Ex parte Young,*
209 U.S. 123 (1908).................................................................*passim*

**Statutes**

29 U.S.C. § 158(c) ...............................................................................5

Ark. Code § 7-6-218(b)........................................................................26

Minn. Stat. § 4.04, subd. 1 ...................................................................17

Minn. Stat. § 8.06.........................................................................17, 21

Minn. Stat. §§ 8.31, 175.20, 181.1721 ......................................................4

Minn. Stat. § 8.31, subd. 1 ...................................................................35

Minn. Stat. § 175.20 ......................................................................19, 26

Minn. Stat. § 181.531 ....................................................................1, 2, 3

Minn. Stat. § 181.531, subd. 1 ...............................................................3

Minn. Stat. § 181.531, subd. 2 ...............................................................4

Minn. Stat. § 181.531, subd. 3(a).........................................................22

Minn. Stat. § 181.531, subd. 5 ...............................................................4

Minn. Stat. § 181.1721 .........................................................................35

Mo. Stat. § 600.015 .............................................................................19

## <u>STATEMENT OF ISSUES</u>

1.    Did the district court correctly conclude that the *Ex parte Young* exception applied to Governor Tim Walz by virtue of his ability to appoint and remove Commissioner Nicole Blissenbach, coupled with his public statements making clear he will vigorously enforce Minn. Stat. § 181.531?

    Apposite Authorities:

    *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021)
    *Ex parte Young*, 209 U.S. 123 (1908)
    *Digit. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952 (8th Cir. 2015)
    *281 Care Comm. v. Arneson*, 766 F.3d 774 (8th Cir. 2014)

2.    Did the district court correctly conclude that the *Ex parte Young* exception applied to Commissioner Nicole Blissenbach by virtue of her statutory obligation to enforce Minn. Stat. § 181.531 coupled with her active enforcement of the same?

    Apposite Authorities:

    *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021)
    *Worth v. Jacobson*, 108 F.4th 677 (8th Cir. 2024)
    *Jones v. Jegley*, 947 F.3d 1100 (8th Cir. 2020)
    *Doe v. DeWine*, 910 F.3d 842 (6th Cir. 2018)

3.    Did the district court correctly conclude the *Ex parte Young* exception applied to Attorney General Keith Ellison by virtue of his statutory power to enforce Minn. Stat. § 181.531, coupled with his statutory obligation to do so and the other defendants-appellants' actions?

    Apposite Authorities:

    *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021)
    *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937 (9th Cir. 2013)
    *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1040 (6th Cir. 2022)
    *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012

## STATEMENT OF THE CASE

## I.   MINNESOTA ENACTS A LAW THAT RESTRICTS EMPLOYER FREE-SPEECH RIGHTS.

On May 17, 2023, the "Employer-Sponsored Meetings or Communication Act" became law in Minnesota. Minn. Stat. § 181.531 (the "Act")[1]. Under the Act, Minnesota employers are prohibited from discharging, disciplining or otherwise penalizing or threatening to discharge, discipline, or otherwise penalize an employee:

> (1) because the employee declines to attend or participate in an employer-sponsored meeting or declines to receive or listen to communications from the employer or the agent, representative, or designee of the employer if the meeting or communication is to communicate the opinion of the employer about **religious or political matters**;
>
> (2) as a means of inducing an employee to attend or participate in meetings or receive or listen to communications described in clause (1); or
>
> (3) because the employee, or a person acting on behalf of the employee, makes a good-faith report, orally or in writing, of a violation or a suspected violation of this section.

*See*, Minn. Stat. § 181.531, subd. 1 (emphasis added)

For purposes of the Act, religious and political matters are broadly defined as follows:

> (1) "political matters" means matters relating to elections for political

---

[1] *See* Act of May 24, 2023, Reg. Sess., ch. 53, art. 11, § 25 (effective August 1, 2023).

1

office, political parties, proposals to change legislation, proposals to change regulations, proposals to change public policy, and the decision to join or support any political party or political, civic, community, fraternal, or labor organization; and

(2) "religious matters" means matters relating to religious belief, affiliation, and practice and the decision to join or support any religious organization or association.

Minn. Stat. § 181.531, subd. 5n

The Act also requires employers to post a notice of employees' rights under the Act in places where employee notices are customarily posted.[2]  Further, under the Act, private individuals may bring a civil action to enforce its provisions.  Minn. Stat. § 181.531, subd. 2.  Additionally, both the Minnesota Attorney General and the Commissioner of the Minnesota Department of Labor and Industry have independent authority to enforce the Act.  *See* Minn. Stat. §§ 8.31, 175.20, 181.1721.

### A.    Appellees Challenge The Act As Violating The United States Constitution And Being Preempted Under The National Labor Relations Act.

In February 2024, Plaintiffs-Appellees, the Minnesota Chapter of Associated Builders and Contractors, Inc., the National Federation of Independent Business, Inc., and Laketown Electric filed their initial Complaint, seeking a declaration from the district court that the Act violates the United States Constitution and is preempted by the National Labor Relations Act.[3]  Specifically, Plaintiffs-Appellees seek relief

---

[2] *Id.*
[3] App. 25; R. Doc. 1 at 14, ¶ 1-4.

because the Act regulates speech and therefore violates Plaintiffs-Appellees' First Amendment rights. *First Nat'l Bank of Boston v. Bellotti,* 435 U.S. 765, 776 (1978).[4] Furthermore, Plaintiffs-Appellees seek relief because the Act attempts to regulate employer speech in a manner that Congress has prohibited under the National Labor Relations Act.[5] *See, e.g.*, 29 U.S.C. § 158(c) ("Section 8(c)" of the NLRA). Thus, as part of the requested relief in the initial Complaint, Plaintiffs-Appellees sought to have the district court enjoin the Minnesota Commissioner of the Department of Labor and Industry, Nicole Blissenbach, and the Minnesota Attorney General, Keith Ellison, from enforcing the Act.[6]

After the initial Complaint was filed on April 23, 2024, Governor Walz gave a speech at a conference hosted by North America's Building Trades Unions, in which Governor Walz stated (referring to Act), "Minnesota was going to ban that practice, of having those captive anti-union meetings. ***You go to jail now if you do that in Minnesota*** because you can't intimidate people."[7] After that speech, Governor Walz later signed into law an amendment to the Act, requiring the Minnesota Commissioner of Labor and Industry to develop the notice Minnesota employers are required to post, notifying employees of their rights under the Act, in

---

[4] App. 21; R. Doc. 1 at ¶ 31.
[5] App. 21; R. Doc. 1 at ¶ 41.
[6] App. 25; R. Doc. 1 at ¶ 2.
[7] App. 213; R. Doc. 58 at ¶ 32.

English and the five most common languages spoken in Minnesota.[8]  *See* Minn. Stat. § 181.531, subd. 3(a).  Thereafter, on August 13, 2024, Governor Walz gave another speech at a convention held by the American Federation of State, County, and Municipal Employees.[9]  During his speech, Governor Walz stated: "We banned those damn captive-audience meetings for good in Minnesota. Last time I said that at a union meeting, they sued me over it. It was the best thing to get sued over I ever said. ***We're going to continue to ban those meetings***."[10]  The Complaint was amended twice considering these events.  As a result, for purposes of this appeal, the operative complaint is the Second Amended and Supplemental Complaint, which considers these events, and was filed on August 30, 2024. [11]

## B.    Appellants' Motion To Dismiss Is Properly Denied By The District Court.

Appellants moved to dismiss the Second Amended and Supplemental Complaint, arguing that they were entitled to Eleventh Amendment sovereign immunity.[12]  On September 16, 2024, the district court heard argument on the renewed motion to dismiss.[13]  At the conclusion of the hearing, the district court

---

[8] App. 216; R. Doc. 58 at ¶ 40.
[9] App. 214; R. Doc. 58 at ¶ 36.
[10] App. 214; R. Doc. 58 at ¶ 36.
[11] App. 202-223; R. Doc. 58 at 1-22.
[12] *See Transcript of District Court Hearing*, September 16, 2024 ("Tr."), 1-50; R. Doc. 62 at 1-50.
[13] Tr. at 1; R. Doc. 62 at 1.

ruled from the bench and denied Appellants' Motion to Dismiss as to all three defendants.[14]

### 1. The district court reviewed applicable case law prior to ruling from the bench.

Prior to making its bench ruling, the district court reviewed applicable case law and emphasized the importance of Eleventh Amendment immunity while noting there is an exception to that immunity under *Ex parte Young*.[15] Specifically, the district court reiterated that this exception applies if: (1) the relief sought is prospective; and (2) there are officials with the ability to enforce the statute that have either threatened or about to commence proceedings.[16] Indeed, the district court acknowledged that it was required to determine whether a connection between the defendant and the enforcement of the law existed, but noted "case law teaches that it need not be an exclusive enforcement responsibility. It need not be the only official with a connection to the enforcement of the law. It may not be the primary enforcement ability."[17]

In addition, the district court also recognized that case law is evolving as courts are presented with challenges to laws that are designed for enforcement through a private right of action, particularly in light of the Supreme Court's decision

---

[14] Tr. 35-45; R. Doc. 62 at 35-45.
[15] Tr. at 36:7-20; R. Doc. 62 at 36:7-20.
[16] Tr. at 36:16-20; R. Doc. 62 at 36:16-20.
[17] Tr. at 37:23-25, 38:1-2; R. Doc. 62 at 37:23-25, 38:1-2.

in *Whole Women's Health*, 595 U.S. 30 (2021).[18]   In fact, the district court acknowledged that in *Whole Woman's Health,* the Chief Justice stated that eight justices agreed that the *Ex parte Young* exception applied in that case because there still existed state executive officials who retained authority to enforce the statute at issue, which was enforced primarily through a private cause of action.[19]   The district court also observed this case involves a First Amendment challenge, where the Eighth Circuit in *Jones v. Jegley*, 947 F. 3d 1100 (8th Cir. 2020), previously rejected the argument that a plaintiff must be prosecuted before challenging a statute violating the First Amendment.[20]   In reviewing applicable case law, the district court further relied upon *NRA vs. Vullo*, 602 U.S. 175, 191 (2024), as being instructive on the *Ex parte Young* analysis, stating: "Ultimately, [the Supreme Court's decision in] *Bantam Books* stands for the principle that a government official cannot do indirectly what she is barred from doing directly. A government official cannot coerce a private party to punish or suppress disfavored speech on her behalf."[21]

Finally, as part of its analysis, the district court also acknowledged that the motion to dismiss was based upon a factual attack under Fed. R. P. 12(b)(1) and it was required to look at the evidence.[22]   Based upon its review of applicable Eighth

---

[18] Tr. at 42:6-16; R. Doc. 62 at 42:6-16.

[19] Tr. at 42:24-25, 43:1-2; R. Doc. 62 at 42:24-25, 43:1-2.

[20] Tr. at 44:10-14; R. Doc. 62 at 44:10-14.

[21] Tr. at 44:24-26, 45:1-4; R. Doc. 62 at 44:24-26, 45:1-4.

[22] Tr. at 37:9-11; R. Doc. 62 at 37:9-11.

Circuit and Supreme Court precedent, the district court found all three of the defendants have an adequate connection to enforcement or threatening enforcement of the law.[23]   Indeed, in reviewing the facts as presented before it, the district court found that in the instant case, the facts were even more compelling than those in *Whole Woman's Health*, 495 U.S. 30 (2021).   Specifically, the district court found, factually, the defendants-appellants retained the authority to enforce the law in some way, and they took steps affirmatively toward executing that authority, including Commissioner Blissenbach creating the employee notice of rights under the Act and placing it on the DOLI's website, but also including Governor Walz repeatedly talking about this law and threatening explicitly to enforce it.[24]

> ### 2.   After reviewing applicable case law, the district court found Governor Walz has a connection to enforcing the Act and is threatening to enforce the Act.

After reviewing the applicable standards, the district court found Governor Walz was not entitled to sovereign immunity.   Governor Walz has a connection to the Act because he can appoint **and** remove Commissioner Blissenbach, which distinguished this case from other Eighth Circuit cases, where no connection to enforcement of a law was found when the state official only had appointing ability.[25] Additionally, the district court found the facts revealed Governor Walz is actually

---

[23] Tr. at 35-45; R. Doc. 62 at 35-45.
[24] Tr. at 38:11-22, 41:1-24; R. Doc. 62 at 38:11-22, 41:1-24.
[25] Tr. at 38:11-16, R. Doc. 62 at 38:11-16.

threatening to enforce the Act.[26]  Rather than simply celebrate the passage of the Act, the district court found Governor Walz went a step further by his combination of speeches where he stated that "if you violate this law, you will go to jail" and then later proudly mentioning the Act even though he was getting sued for it.[27]  Indeed, the district court found Governor Walz's comments at the two meetings evinced a robust commitment to enforcing the law and a threat of enforcing the law that is "unique among all the cases that [it] could find."[28]  Finally, in denying the Motion to Dismiss as to Governor Walz, the district court also noted the irony of a defendant advocating for dismissal while simultaneously threatening enforcement of the law.[29]

### 3. After reviewing applicable case law, the district court found Commissioner Blissenbach has a connection to enforcing the Act and is enforcing the Act.

The district court found Commissioner Blissenbach was not entitled to sovereign immunity because the Commissioner has an adequate tie to enforcement of the law.[30]  First and foremost, as the district court found, the Act is replete with examples of things that the Commissioner does in support of the enforcement of this

---

[26] Tr. at 38:17-25, 39:1-7; R. Doc. 62 at 38:17-25, 39:1-7.
[27] Tr. at 39:12-17; R. Doc. 62 at 39:12-17.
[28] Tr. at 38:24-25, 39:1-3; R. Doc. 62 at 38:24-25, 39:1-3.
[29] Tr. at 39:3-5; R. Doc. 62 at 39:3-5.
[30] Tr. at 41:1-3; R. Doc. 62 at 41:1-3.

law, and "there's no suggestion [in case law] that it has to be simply a pure traditional prosecutorial authority to count as sufficient tie to the enforcement of the law."[31]

The district further ruled, for purposes of the *Ex parte Young* exception, enforcement cannot have as narrow a meaning as the Appellants suggest, particularly where enforcement is designed through a private cause of action.[32] Regardless, the district court found the fact that Commissioner Blissenbach prepared and posted a notice informing employees of their rights under the Act on the DOLI website, and also acknowledged she would refer employees to private attorneys to enforce the Act established enforcement of the Act,[33] citing *Doe vs. DeWine*, 910 F.3d 842 (6th Cir. 2018), *Jones v. Jegley*, 947 F.3d 1100 (8th Cir. 2020)*, as well as *Whole Woman's Health*.

### 4. After reviewing applicable case law, the district court found Attorney General Ellison has a connection to enforcing the Act and the threat is imminent.

Finally, the district court also found that as to Attorney General Ellison, there was no dispute that he had authority to enforce the law.[34] Additionally, the district court found that considering *Whole Woman's Health* and the Defendant-Appellants' actions, there is a significant threat of enforcement.[35] Specifically, the district court

---

[31] Tr. at 41:1-15; R. Doc. 62 at 41:1-15.
[32] Tr. at 43:11-15; R. Doc. 62 at 43:11-15.
[33] Tr. at 41:1-15; R. Doc. 62 at 41:1-15.
[34] Tr. at 41:25, 42:1-2; R. Doc. 62 at 41:25, 42:1-2.
[35] Tr. at 44:5-9; R. Doc. 62 at 44:5-9.

found that because Attorney General Ellison undisputedly retains authority to enforce the Act, and because his co-defendants are enforcing and threatening to vigorously enforce the Act, Attorney General Ellison fell within the *Ex parte Young* exception pursuant to *Whole Woman's Health*.[36]

To that end, it is also important to note that the district court did not agree with either side's characterization of the ultimate reading of *Whole Woman's Health* – rather it was the specific combination of *Whole Woman's Health*, along with the co-Defendants-Appellants' threats of imminent enforcement, that meant Attorney General Ellison (as a state official retaining authority to enforce the Act) was not entitled to sovereign immunity.[37]

Given the foregoing, the district court concluded the *Ex parte Young* exception applied to all Defendants-Appellants and denied their Motion to Dismiss. This Appeal followed.

## SUMMARY OF ARGUMENT

The district court correctly denied Appellants' motion to dismiss, finding that neither Governor Tim Walz, Commissioner Nicole Blissenbach nor Attorney General Keith Ellison are entitled to sovereign immunity. The Supreme Court foreclosed Appellants' sovereign immunity argument in *Whole Woman's Health v.*

---

[36] Tr. at 43:1-25, 44:1-9; R. Doc. 62 at 43:1-25, 44:1-9.
[37] Tr. at 42:6-16, 44:5-9; R. Doc. 62 at 42:6-16, 44:5-9.

*Jackson*, 595 U.S. 30, 39 (2021). As the Supreme Court held, the exception to sovereign immunity requires that a state official have some connection to the enforcement of a law and threaten to or are about to commence proceedings to be stripped of sovereign immunity. *Ex parte Young,* 209 U.S. 123, 159–60 (1908). In *Whole Woman's Health*, the State of Texas attempted to evade *Ex parte Young* and pre-enforcement judicial review of a statute by granting the primary enforcement mechanism to private individuals. The Supreme Court rejected that argument – eight Justices found that because state officials existed who retained the authority to enforce the law, those state officials did not retain their sovereign immunity.

The same is true here. The State of Minnesota has enacted a blatantly unconstitutional law and attempts to shield it from review by the judiciary by granting an enforcement mechanism to individuals. But Appellants retain authority to enforce the Act – and so Appellants are not entitled to sovereign immunity. To hold to the contrary invites frightening consequences – a proliferation of unconstitutional statutes restricting celebrated rights of citizens, with no ability for any individual to contest such laws until they are hauled into court.

Even absent *Whole Woman's Health*, however, the *Ex parte Young* exception applies here. Governor Walz, in his ability to appoint **and** remove Commissioner Blissenbach, has a direct connection with enforcement of the Act, and through his litany of threats to employers, has demonstrated a clear fervor to do so. Similarly,

the Commissioner of Minnesota's DOLI Nicole Blissenbach ("Commissioner Blissenbach") is statutorily required to enforce and is currently enforcing the Act, and she maintains extensive authority to enter into and investigate employer establishments for potential violations of the Act. Finally, Appellants admit Defendant-Appellant Attorney General Keith Ellison ("Attorney General Ellison") similarly has a connection to enforcement the Act, and despite his unwillingness to do so, he is statutorily and affirmatively obligated to enforce the Act.

Ultimately, Appellants and the State of Minnesota, are unconstitutionally suppressing the free speech rights of citizens. Appellants argue they are nothing but innocent bystanders in this process – that they have no power to enforce the Act, and that accordingly, the Act should remain in effect, continuing to chill employer free speech rights in the meantime. The facts on the ground stand in stark contrast – Governor Walz fervently advocates for the enforcement of the Act and can ensure it is. Commissioner Blissenbach has the power to, is statutorily obligated to, and currently is enforcing the Act. Lastly, Attorney General Ellison has the power to, and is statutorily obligated to, enforce the Act.

Given the foregoing, the district court properly followed United States Supreme Court and Eighth Circuit precedent, and the decision should be affirmed.

# ARGUMENT

## I. THE DISTRICT COURT CORRECTLY CONCLUDED THAT GOVERNOR WALZ AND COMMISSIONER BLISSENBACH HAVE A CONNECTION TO THE ENFORCEMENT OF THE ACT UNDER EX PARTE YOUNG

The district court correctly concluded that Governor Walz and Commissioner Blissenbach have a connection to enforcement of the Act under *Ex. parte Young*. "Generally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021). The Supreme Court has long "recognized a narrow exception grounded in traditional equity practice—one that allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law." Id. (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)).

"In determining whether this exception applies, a court conducts 'a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Minnesota RFL Republican Farmer Lab. Caucus v. Freeman*, 33 F.4th 985, 989–90 (8th Cir. 2022) (citing *281 Care Comm. v. Arneson* (*Care Committee I*), 638 F.3d 621, 632 (8th Cir. 2011)); *Courthouse New Serv. v. Gilmer*, 48 F.4th 808 (8th Cir. 2022). "The *Ex parte Young* exception applies against officials 'who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected

13

an unconstitutional act, violating the Federal Constitution.'" *Minn. RFL*, 33 F.4th at

990 (citing *281 Care Comm. v. Arneson* (*Care Committee II*), 766 F.3d 774, 797 (8th

Cir. 2014) (quoting *Ex parte Young*, 209 U.S. at 156)).

Thus, in order to challenge the constitutionality of a state law in federal court,

a plaintiff must show that the state officers against whom the suit is brought (1) have

"some connection with the enforcement" of the challenged law; and (2) have

"threaten[ed] and [are] about to commence proceedings" or have "demonstrated

willingness" to enforce the statute. *Ex parte Young*, 209 U.S. at 156–57; *281 Care

Comm. v. Arneson*, 766 F.3d 774, 797 (8th Cir. 2014).

### A. Governor Walz's Ability To Remove And Appoint The DOLI Commissioner And Employ Private Counsel In Place Of The Attorney General Gives Him The Ability To Enforce The Act.

The district court correctly found Governor Walz has a direct connection with

the enforcement of the Act. Specifically, he has the power to remove Commissioner

Blissenbach at any time (if she refuses to enforce the Act) and appoint a new

Commissioner in her place. *See* Minn. Stat. § 4.04, subd. 1. Beyond that, Governor

Walz may, if in his opinion the public interest requires as such, "employ counsel to

act in any action or proceeding if the attorney general is in any way interested

adversely to the state." Minn. Stat. § 8.06. Accordingly, while Commissioner

Blissenbach and AG Ellison claim they do not intend to enforce the Act, Governor

Walz ***still*** has the power to remove the Commissioner and employ counsel in AG

Ellison's place to enforce the Act.

The Governor has been abundantly clear – he *will* enforce this Act: "You go to jail now if you [hold captive-audience meetings] in Minnesota because you can't intimidate people."[38]  Indeed, after being notified of this litigation, Governor Walz double-downed and stated, "We banned those damn captive-audience meetings for good in Minnesota.  Last time I said that at a union meeting, they sued me over.  It was the best thing to get sued over I ever said.  *We're going to continue to ban those meetings*."[39]

Appellants reliance upon *Digit. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 964 (8th Cir. 2015) for the proposition that mere appointment power does not establish Governor's Walz's connection to the Act because Commissioner Blissenbach also allegedly lacks the required connection for *Ex parte Young* purposes is misplaced.  In *Digit. Recognition Network*, this Court found that the Nebraska governor's power to direct the attorney general regarding enforcement of a challenged statute was insufficient to give the governor the requisite connection to enforcement of the statute under *Ex parte Young.*  Specifically, this Court found a lack of connection to enforcement of the law because the attorney general also lacked the requisite connection to enforcement.  In other words, if the attorney general could

---

[38] App. 213; R. Doc. 58, at ¶ 32.
[39] App. 214; R. Doc. 58, at ¶ 36.

not enforce the law, the governor certainly lacked authority as well. This case presents a markedly different scenario than *Digit. Recognition Network, Inc.* As outlined below, not only does Commissioner Blissenbach have the power to enforce the Act under Minn. Stat. § 175.20, but she is also ***already actively enforcing it***.[40]

Beyond *Digital Recognition Network*, Appellants also point this Court to *Balogh v. Lombardi*, 816 F.3d 536, 539 (8th Cir. 2016), and *Church v. Missouri*, 913 F.3d 736, 749 (8th Cir. 2019) in an effort to support their argument that Governor Walz's power to remove and appoint the DOLI Commissioner does not give the Governor sufficient connection to enforcement of the Act for *Ex parte Young* purposes. These two cases, however, do not support Appellants' position.

First, *Balogh* involved only the director of the Missouri Department of Corrections' ability to select the state's execution team members, who in turn, were permitted under Missouri law to sue any person who knowingly disclosed their identity. *Balogh*, 816 F.3d at 540. This Court held that, because the director's ability to select the execution team had "nothing to do with an execution team member's potential prosecution" of someone who disclosed their identity, the director did not have a sufficient connection to the enforcement of the statute. *Id*. at 546.

Second, in *Church*, the governor of Missouri had the power to ***appoint***, but not remove, members of the state's public defender commission with the advice and

---

[40] *See* Section I.B, *infra*.

consent of the Missouri senate. *Church*, 913 F.3d at 750; Mo. Stat. § 600.015 ("The commission shall be composed of seven members, four of whom shall be lawyers, appointed by the governor with the advice and consent of the senate."). In *Church*, the plaintiffs argued that the governor, along with the commission and its members, violated the Sixth Amendment by failing to adequately fund the public defender commission and therefore failed to provide indigent defendants with adequate representation. The plaintiffs further argued that the governor had sufficient connection with enforcement of the statute because of his ability to appoint members of the commission. This Court disagreed with the *Church* plaintiffs' argument for the same reasoning as in *Balogh*. In sum, *Church* did not concern the power of the governor to ***remove*** the members of the commission, nor did it even concern a failure to enforce a challenged statute.

As the district court correctly found, the facts here stand in marked contrast to those set forth in *Balogh* and *Church*. In short, whereas in *Balogh,* the director's selection of the execution team had "nothing to do with an execution team member's potential prosecution", Governor Walz's ability to remove and appoint a new DOLI Commissioner has ***everything*** to do with the Commissioner's potential enforcement of the Act. Governor Walz' ability to remove the Commissioner is not simply administrative – he can remove any Commissioner who refuses to enforce the Act and appoint one who will do so. Further, Governor Walz has been very clear that he

intends to enforce the Act. Unlike the instant case, the director in *Balogh* had no such reason to remove members who declined to prosecute disclosures of their own personal identity.

In essence, Governor Walz has the ability to direct the DOLI Commissioner to enforce the Act – an ability which this Court implied is a sufficient connection to enforcement for *Ex parte Young* purposes. *Digital Recognition Network, Inc.*, 803 F.3d at 964 (finding that governor did not have a sufficient connection to enforcement via his ability to direct attorney general to enforce the statute at issue only because the attorney general himself did not have a sufficient connection to enforcement). *Digital Recognition Network* implies that, if the attorney general in that case had had a sufficient connection and ability to enforce the statute, the governor's ability to direct them to do so would likewise give the governor sufficient connection to enforcement. That is the case here – the DOLI Commissioner can enforce and is enforcing the Act[41], and Governor Walz has the power to force the Commissioner to do so, lest he simply fire her and appoint somebody who will.

Appellants also fail to address the other mechanism via which the Governor has a connection to the Act – his ability to appoint private counsel in place of the Attorney General. Minn. Stat. § 8.06 ("The governor, if in the governor's opinion the public interest requires such action, may employ counsel to act in any action or

---

[41] *See* Section I.B, *infra*.

proceeding if the attorney general is in any way interested adversely to the state."). In short, if Governor Walz believes it necessary, he may employ counsel to act as the Attorney General in any action or proceeding to enforce the Act if the Attorney General refuses to do so.

Governor Walz can direct Commissioner Blissenbach to enforce the Act (as well as employ counsel to enforce the Act), and these abilities give him sufficient connection to the Act's enforcement for purposes of *Ex parte Young*. He is not entitled to sovereign immunity, and the district court's well-reasoned decision should stand.

### B. Commissioner Blissenbach Is Statutorily Required To Enforce The Act, And Is Already Doing So

#### 1. The Commissioner is already enforcing the Act.

The district court also correctly found Commissioner Blissenbach has a direct connection with the enforcement of the Act. Indeed, Commissioner Blissenbach is already enforcing the Act. The Act itself, as recently amended, commanded Commissioner Blissenbach to enforce it by requiring the Commissioner to "develop an educational poster providing notice of employees' rights provided under [the Act] . . . . The notice shall be available in English and the five most common languages spoken in Minnesota." Minn. Stat. § 181.531, subd. 3(a). After the Act was amended, the Commissioner began complying with her statutory obligations – she developed an "educational" poster providing notice of employees' rights under the

Act and DOLI's website informs employers that they ***must*** post the employer-sponsored meetings poster.[42] In that regard, Commissioner Blissenbach and DOLI demonstrate that not only does she have a ***connection*** with the enforcement of the Act, ***but she is also already actively doing so***. While Commissioner Blissenbach claims she may not be required to bring legal action against employers who violate the Act, she is mandated, by law to inform employees how to do so. As the district court found, these facts were sufficient to show enforcement by Commissioner Blissenbach: "[T]he statute is replete with examples that the commissioner does in support of the enforcement of this law…".)[43] (citing *Doe v. DeWine*, 910 F.3d 842, 848–49 (6th Cir. 2018) ("[L]ack of direct criminal enforcement authority does not foreclose [plaintiff's] reliance on *Ex parte Young*…. enjoining a statewide official under *Young* is appropriate when there is a realistic possibility the official will take legal ***or administrative actions*** against the plaintiff's interests.") (cleaned up) (emphasis added).

This Court's opinion in *Worth v. Jacobson*, 108 F.4th 677 (8th Cir. 2024) is also instructive and controlling to establishing Commissioner Blissenbach connection to enforcement of the Act. There, as Appellants note, Minnesota's public safety commissioner had connection to the enforcement of a statute, which denied

---

[42] https://www.dli.mn.gov/sites/default/files/pdf/meetings_poster.pdf (last visited January 10, 2025).
[43] Tr. at 41:9-10; R. Doc. 62 at 41:9-10.

Minnesotans aged 18 to 20 permits to carry a handgun, because the commissioner created and implemented a system to collect applicant dates of birth. In addition to creating and implementing that system, the public safety commissioner was also required, as the Court noted, to make application forms available on the internet. *Worth*, 108 F.4th at 684, n.3. This matter is no different in establishing connection to enforcement of the Act – Commissioner Blissenbach is required to create a poster and publish it for use by employers, which employers are then required to post.

Appellants posit a striking contention in an attempt to distinguish this matter from *Worth*: "Neither the poster nor [Commissioner Blissenbach's] discretionary authority to conduct labor investigations enable enforcement of the Act." *See* Appellants Br. at 26. The contention is striking because it is simply not true – the poster created by the Commissioner is required to be posted by employers throughout the State. Employees who see the poster will be encouraged to sue employers who violate the Act as a direct result of the Commissioner's actions – in other words, the Commissioner's poster will directly enable enforcement of the Act. Not only that, but the Commissioner has admitted that if individuals contact DOLI concerning alleged violations of the Act, DOLI advises individuals to contact legal counsel. *See* Appellants Br. at 28.

The exact sequence goes this way: 1) the Commissioner creates the poster which employers are required to put up; 2) an individual sees the poster, believes

their employer has violated the Act, and calls DOLI; 3) DOLI encourages the individual to contact legal counsel. This sequence, according to Appellants, does not give the Commissioner ***any connection at all*** to the Act's enforcement – despite her being involved at every possible step in the enforcement as well as the chilling and suppression of Appellees' speech.

Put another way: Commissioner Blissenbach tries to do a two-step, enforcing the Act by creating posters which encourage employees to bring suits against employers who violate the Act, while telling this Court she is hands-off, and plays no role in the enforcement of the Act. This argument is unavailing – the Commissioner's actions not only demonstrate a connection to the Act but constitute actual enforcement. As the Supreme Court recently stated (and the district court found in this case): "Ultimately, *Bantam Books* stands for the principle that a government official cannot do indirectly what she is barred from doing directly: A government official *cannot coerce a private party to punish or suppress disfavored speech on her behalf*." *NRA of America, v. Vullo*, 602 U.S. 175, 191 (2024) (emphasis added).

> **2. The law provides the Commissioner with numerous methods to enforce the Act.**

In addition to actually enforcing the law, the statutory scheme empowers the Commissioner to investigate violations of the Act by entering and inspecting places of employment, issuing subpoenas, collecting evidence, interviewing witnesses, and

more under Minn. Stat. § 175.20. In fact, the Commissioner is empowered to investigate potential violations of the Act and may then refer such violations to the Minnesota Attorney General – who, Defendants admit, has authority to enforce the Act. As noted above, the Act requires a notice posting by employers of the rights given to employees by the Act – it is not clear how the Commissioner would posit such provision be enforced if DOLI has no authority to do so.

In addition to her actual enforcement of the Act, the Commissioner's power to enter places of business, inspect, and investigate employers or otherwise refer them to the Attorney General or private attorneys for prosecution for violating the Act also provides the requisite connection necessary under *Ex parte Young*. *Jones v. Jegley*, 947 F.3d 1100, 1103 n.2 (8th Cir. 2020) ("Because the Arkansas Ethics Commission *investigates campaign-finance violations*, levies fines against candidates, and *makes referrals to law enforcement*, Ark. Code § 7-6-218(b), the Commissioners have a 'strong enough' connection to the challenged law to make them 'proper defendant[s].'" (emphasis added); *281 Care Comm. v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011) ("While we do require 'some connection' between the attorney general and the challenged statute, *that connection does not need to be primary authority* to enforce the challenged law.") (emphasis added); *Reprod. Health Servs. Of Planned Parenthood of St. Louis Region, Inc. v. Nixon*, 428 F.3d 1139, 1145 (8th Cir. 2005) (attorney general was proper defendant under *Ex parte*

*Young* where attorney general was empowered to "aid prosecutors when so directed by the Governor" and to "sign indictments when so directed by the trial court"); *see also Pocatello Educ. Ass'n v. Heideman*, 123 F. App'x 765, 766 (9th Cir. 2005) (secretary of state's authority to "investigate violations and seek injunctive relief" provided sufficient connection under *Ex parte Young*).

Finally, contrary to Appellant's contentions, the Fifth Circuit's holding in *Mi Familia Vota v. Ogg*, 105 F.4th 313, 332 (5th Cir. 2024) does not override this Court's on-point and controlling precedent. In *Reproductive Health Systems*, this Court held that Missouri's attorney general had a sufficient connection to enforcement of a statute where he could only participate in a criminal proceeding if his assistance was requested by the assigned county attorney or the trial court asked him to sign indictments. 428 F.3d at1145-1146. Similarly, in *Jegley*, this Court held that the Arkansas Ethics Commission's ability to ***investigate*** campaign-finance violations, and make referrals to law enforcement, represented a strong enough connection to enforcement for purpose of *Ex parte Young*. *Jegley*, 947 F.3d at 1103 n.2.

Applying *Reproductive Health Systems* and *Jegley* unequivocally establishes Commissioner Blissenbach has sufficient connection to the Act. Commissioner Blissenbach is not only currently enforcing the Act by creating a notice-posting, but she also has the ability to investigate violations of the Act, and make referrals to

Attorney General Ellison for prosecution. Given these facts, this Court should decline Appellants' invitation to overrule its own precedent and should uphold the district court's well-reasoned conclusion that Commissioner Blissenbach has a connection to enforcement of the Act.

II. **THE DISTRICT COURT CORRECTLY FOUND APPELLEES HAVE MET THE SECOND PRONG OF THE EX PARTE YOUNG ANALYSIS**

   A. **That Appellants May Take Enforcement Action Against Appellees Is Enough To Satisfy *Ex Parte Young*'s Second Prong**

Although Commissioner Blissenbach is already enforcing the Act, the fact that the Appellants **may** take enforcement action against Plaintiffs is sufficient to satisfy *Ex parte Young*. Indeed, recent Supreme Court jurisprudence underscores that the *Ex parte Young* exception to sovereign immunity is applicable in this matter. In *Whole Women's Health v. Jackson*, 595 U.S. 30, 142 S. Ct. 522 (2021), the Supreme Court reviewed a Texas statute which contained a private right of action and reaffirmed that "*Ex parte Young* authorizes federal courts to enjoin certain state officials from enforcing state laws." 142 S. Ct. at 534. As relevant here, in *Whole Women's Health,* the Court held that the *Ex parte Young* exception permitted the plaintiffs' claim to proceed against three "executive licensing official[s] who *may* or must take enforcement actions against the petitioners if they violate the terms of Texas's Health and Safety Code." *Id*. at 535 (emphasis added); *see Id*. at 537 ("[T]his is enough at the motion to dismiss stage to suggest the petitioners will be the target

of an enforcement action and thus allow this suit to proceed."). So too here. Plaintiffs-Appellees have sued state officials "who may . . . take enforcement actions" against them and their members, and thus sovereign immunity does not bar this suit. *Id*. at 535.

As Chief Justice Roberts stated in his concurrence:

Texas has employed an array of stratagems designed to shield its unconstitutional law from judicial review. To cite just a few, the law authorizes "[a]ny person," other than a government official, to bring a lawsuit against anyone who "aids or abets," or intends to aid or abet, an abortion performed after roughly six weeks; has special preclusion rules that allow multiple lawsuits concerning a single abortion; and contains broad venue provisions that allow lawsuits to be brought in any of Texas's 254 far flung counties, no matter where the abortion took place. See Tex. Health & Safety Code Ann. §§ 171.208(a), (e)(5), 171.210 (West Cum. Supp. 2021). The law then provides for minimum liability of $10,000 plus costs and fees, while barring defendants from recovering their own costs and fees if they prevail. §§ 171.208(b), (i). It also purports to impose backward-looking liability should this Court's precedents or an injunction preventing enforcement of the law be overturned. §§ 171.208(e)(2), (3). And it forbids many state officers from directly enforcing it. § 171.207.

These provisions, among others, effectively chill the provision of abortions in Texas. Texas says that the law also blocks any pre-enforcement judicial review in federal court. On that latter contention, Texas is wrong. As eight Members of the Court agree, see *ante*, at —— –, petitioners may bring a pre-enforcement suit challenging the Texas law in federal court under Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), because there exist state executive officials who retain authority to enforce it. See, e.g., Tex. Occ. Code Ann. § 164.055(a) (West 2021). Given the ongoing chilling effect of the state law, the District Court should resolve this litigation and enter appropriate relief without delay.

*Id.* at 59-60 (emphasis added). It is notable that Chief Justice Roberts was

very clear that a supermajority of the Court – eight justices – agreed that the *Ex parte Young* exception applies where there are state officials who retain authority to enforce the statute at issue.[44]

Appellants heavily rely on *Minnesota RFL Republican Farmer Lab. Caucus v. Freeman*, 33 F.4th 985 (8th Cir. 2022) to support their argument that the *Ex parte Young* exception does not apply where a defendant state official has neither enforced nor threatened to enforce the challenged statute. But *Freeman* did not address the situation here, nor the situation presented specifically in *Whole Woman's Health.* As the district court noted, *Freeman* "involves a different statutory scheme and barely grapples with *Whole Woman's Health* and its impact on the questions there."[45]

In that regard, *Ex parte Young*, *Whole Woman's Health*, and *Freeman* are in harmony with each other – *Ex parte Young* and *Freeman* analyze situations entirely distinct from this one and *Whole Woman's Health* – that is, they analyze situations outside of the loopholes that Texas and Minnesota have exploited by passing unconstitutional statutes which are primarily enforced via private action.  In this situation, the question at step two of the *Ex parte Young* analysis is whether the defendant officials "***may***…take enforcement actions if [plaintiffs] violate" the challenged statute. *Whole Women's Health*, 595 U.S. 30 at 45-46 (emphasis added).

---

[44] A plurality of Justices likewise agreed that *Ex parte Young* is applicable where state officials "may or must" take enforcement action.

[45] Tr. at 44:18-19; R. Doc. 62, at 44:18-19.

Here, as in *Whole Woman's Health*, the answer as outlined in Section I, *supra*, is unequivocally yes, the defendant officials may take enforcement action.

To hold otherwise invites states to promulgate laws that restrict the constitutional rights of citizens without recourse.   In this scenario, individuals or organizations are forced to face a choice: 1) avoid taking any action which may violate the statute and subject them to an individual's suit; or 2) continue taking such actions, and expose themselves to civil liability, including the significant costs of litigation.  No option exists for individuals to preemptively challenge a statute by filing suit against state authorities to seek a declaration that the statute is unconstitutional.  This Court has spoken on that issue: "We have repeatedly **rejected the argument** that a plaintiff **must risk prosecution before challenging a statute under the First Amendment**, and we do so again here." *Jegley*, 947 F.3d at 1104 (emphasis added); *see also Telescope Media Grp. v. Lucero*, 936 F.3d 740, 749 (8th Cir. 2019); *Arkansas Right to Life State Pol. Action Comm. v. Butler*, 146 F.3d 558, 560 (8th Cir. 1998); *Allied Artists Picture Corp. v. Rhodes*, 679 F.2d 656, 665, n.5 (6th Cir. 1982) ("Were this action unavailable to the plaintiffs, they would be unable to vindicate the alleged infringement of their constitutional rights without first violating an Ohio statute requiring a significant change in their business conduct. Such a result is clearly what the doctrine in *Ex parte Young* was in part designed to avoid.").

Consider the following hypothetical: Minnesota passes a statute which forbids women from voting and requires polling areas to post notices that women are not permitted to vote, with the only enforcement mechanism via a private right of action. On election day, women enter a polling area that has posters stating they are not permitted to vote and are required to choose between risking being dragged into litigation for exercising a constitutional right or foregoing the exercise of that right. In this scenario, the impact is clear: scores of women will forego the right to vote to avoid potential litigation and its associated costs. Under Appellants' theory, no person may challenge the blatantly unconstitutional statute prior to enforcement – only after the election has passed, and the damage has been done.

Such statutory schemes run afoul of and directly contrary to the spirit of the Eleventh Amendment and *Ex parte Young*. To allow such a blatant circumvention of the Constitution risks undue proliferation of similarly unconstitutional statutes around the country. The Supreme Court recognized the danger in such statutes and foreclosed such a loophole in *Whole Woman's Health*. This Court should do the same.

> **B.** **Regardless, The District Court Correctly Concluded That Appellants Are Enforcing, Will Enforce, And Must Enforce The Act**
>
> > **1.** **Commissioner Blissenbach is enforcing, and must enforce, the Act.**

The district court correctly found Commissioner Blissenbach is enforcing the

Act.   While Appellants contend her statutorily mandated role in enforcing the Act does not constitute enforcement for purposes of *Ex parte Young,* this contention is without any merit.[46]   Commissioner Blissenbach's declaration and supplemental declaration that she has no present intention to enforce the Act were filed with the district court before the Act was amended.   Since the Act was amended, Commissioner Blissenbach's actions in enforcing the Act undermined her declarations.[47]

Further, Governor Walz's forceful public statements demonstrate his commitment to enforcement of the Act – and as outlined above, Governor Walz essentially has the ability to direct Commissioner Blissenbach to do so.[48]   His comments to that end show a threat to enforce the Act not just by himself, but also a threat to enforce by any official he has the ability to direct – and the district court's decision to that end was appropriate.[49]

> **2.    Governor Walz has demonstrated a clear willingness to harshly enforce the Act.**

Where a party has shown a "demonstrated willingness" to enforce a statute, the second prong of *Ex parte Young* is met.   *281 Care Comm. v. Arneson*, 766 F.3d

---

[46] *See* Section I.B.1, *supra*.

[47] *Compare* App. 143-145; R. Doc. 50 at 3 (filed June 21, 2024) *with* Act of May 17, 2024, Reg. Sess., ch. 110, Art. 7, § 3 (effective date October 1, 2024).

[48] Section I.A, *supra*.

[49] Tr. at 43:3-10; R. Doc 62, at 43:3-10.

774, 797 (8th Cir. 2014) (citing *Kitchen v. Herbert,* 755 F.3d 1193, 1201 (10th Cir. 2014), *McNeilus Truck & Mfg., Inc. v. Ohio ex rel. Montgomery,* 226 F.3d 429, 438 (6th Cir. 2000), and *Okpalobi v. Foster,* 244 F.3d 405, 417 (5th Cir.2001)).

Governor Walz has done exactly this. The Governor made a public speech where he explicitly threatened to send violators of the Act to *jail*. When made aware of this matter, he gave another speech and made clear he did not regret his comments: "Last time I said that at a union meeting, they sued me over it. It was the best thing to get sued over I ever said. We're going to **continue to ban those meetings**."[50]

Appellees have difficulty imagining a clearer demonstrated willingness to enforce the Act. Indeed, in contrast with Commissioner Blissenbach and Attorney General Ellison, the Governor has not put forth any declaration, affidavit, or other supporting evidence to show he disavows his comments. He stands by them, explicitly. As the district court recognized, Governor Walz's behavior "evinces a commitment to enforcing the law and a threat of enforcing the law that is unique among all the cases that I could find…. This particular combination of speeches is more than just celebrating the passage of the law or the good idea behind the law. It is threatening enforcement, and it is proudly mentioning that I'm going to keep talking about this even though I am getting sued for it. It elevates the robustness of

---

[50] App. 214; R. Doc. 58, at 13 ¶ 36.

the commitment."[51]

Governor Walz can enforce the Act, and he has made abundantly clear that he intends to do so. This Court, like the district court, should arrive at the same conclusion.

### 3. Attorney General Ellison is statutorily required to enforce the Act.

Finally, the district court also correctly found that the *Ex parte Young* exception applies to Attorney General Ellison. Minnesota law is clear: "[t]he attorney general ***shall*** investigate violations of the law of this state respecting unfair, discriminatory, and other unlawful practices in business, commerce, or trade…." Minn. Stat. § 8.31, subd. 1 (emphasis added). The Attorney General is authorized to enforce Chapter 181, including the Act, by virtue of his power under § 8.31. Minn. Stat. § 181.1721. While Attorney General Ellison claims no desire to enforce the Act, this does not relieve him of his statutory obligation, and that obligation constitutes a threat to commence proceedings against Plaintiffs and employers throughout Minnesota.

Indeed, in *Reproductive Health Systems*, 428 F.3d 1139, 1145, this Court held that an attorney general was a potentially proper party even where she had no obligation to enforce the challenged statute and could only do so at the direction of

---

[51] Tr. at 38:25-39:3, 39:12-17; R. Doc 62, at 38:25-39:3, 39:12-17.

a third party.  The facts here go even farther – not only is Attorney General Ellison **allowed** to enforce the Act, but he is also **required** to do so.  *See Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013) (attorney general's **duty** to prosecute violations of challenged statute foreclosed Eleventh Amendment immunity); *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1040 (6th Cir. 2022) (district attorneys general were not entitled to immunity where they had authority and **duty** to enforce challenged statute); *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012) (state official was not entitled to Eleventh Amendment immunity because he was "duty-bound" to enforce the challenged statute); *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 847 (9th Cir. 2022), *opinion amended on denial of reh'g,* 312 F.3d 416 (9th Cir. 2002) (state official was not entitled to Eleventh Amendment immunity because he had "direct authority over and principal responsibility for" enforcing the challenged statute).

Appellants make much ado of the fact that Attorney General Ellison has submitted a declaration contrary to his statutory duties and argue that Appellees submitted no other evidence to rebut the Attorney General's declaration.[52]   But of course, Appellees need not submit any further rebuttal evidence – as they say, "the proof is in the pudding".   The evidence rebutting Attorney General Ellison's

---

[52] Appellants Br. at 31-32.

declaration is his affirmative statutory obligation to enforce the Act and his co-Defendants-Appellants' actions.[53]  In short, the Attorney General may not simply shrug off his statutory duties – his declaration to the contrary is void, and this Court should refuse to consider it. [54]  Even if the affidavit is considered, it does not, and cannot, override the Attorney General's statutory obligations.

Appellants' arguments concerning Attorney General Ellison are thus without merit.  Attorney General Ellison can, and must, enforce the Act.  Given his statutory obligation to enforce the Act as well as the other Defendant-Appellants' conduct, the district court correctly concluded he is a proper party, and this Court should uphold that conclusion.

### C.    The District Court's Ruling Properly Decided The Jurisdictional Issue.

On a final note, Appellants' needless parsing of the district court's ruling is unavailing.  While Appellants argue the district court made a procedural error because there is a lack of clarity as to whether the district court conclusively decided the jurisdictional issue, the argument is unavailing.[55]

---

[53] Appellants contend that the district court failed to consider Attorney General Ellison's declaration.  (Appellants Br. at 31).  Not so – the district court specifically mentioned that Appellants were making a factual attack, and that that does make a difference.  (Tr. at 36:24-25, 37:1-2; R. Doc. 62 at 36:24-25, 37:1-2.

[54] Indeed, it is further extremely notable that Appellants fail to even address the fact that the Attorney General **must** enforce the Act.

[55] Appellants Br. at 40.

Appellants appear to overlook that subject-matter jurisdiction is an issue which can be raised and re-raised at any point during this litigation. Fed. R. Civ. P. 12(h)(3). The district court's comments plainly relate to that and the district court's obligation to be mindful itself of subject-matter jurisdiction. Regardless, there was more than sufficient factual evidence before the district court in deciding the issue:

- Governor Walz and his litany of uncontroverted comments regarding his commitment to enforcing the Act, with no declaration to the contrary;

- Commissioner Blissenbach's declaration that she has no intention to enforce the Act, which was belied in whole by her statutory obligations pursuant to the Act as well as her actions in actually enforcing the Act;

- Attorney General Ellison's declaration that he had no intention to enforce the Act, even though he is required to do so by law, and despite the fact that he retains ability to enforce the Act.

In short, the evidence before the district court was enough to decide the jurisdictional issue – in favor of Appellees. The district court's comments simply remind the parties that subject-matter jurisdiction is an ever-present issue – and that the issue can and should be re-raised should any new facts (e.g., an amendment to the Act) arise. Appellants' arguments on this front should be quickly dispensed with.

## III. CONCLUSION

The district court's order should be affirmed. The State of Minnesota, like

Texas in *Whole Woman's Health*, believes they have found a fool-proof workaround to pre-enforcement review of blatantly unconstitutional laws like the Act. The Supreme Court recognized the danger of such laws in *Whole Woman's Health*, and permanently closed the loophole left open by *Ex parte Young*. The exact same fact-pattern as *Whole Woman's Health* now arises – there remain state officials with the authority, and the duty, to enforce the Act. This Court should follow the Supreme Court's lead and put an end, here and now, to the proliferation of like statutes.

Irrespective of *Whole Woman's Health*, Appellants here are stripped of sovereign immunity under *Ex parte Young*. Governor Walz, in his ability to appoint and remove Commissioner Blissenbach, and employ counsel in place of AG Ellison, has a direct connection with enforcement of the Act, and through his litany of threats, has demonstrated a clear fervor to do so. Commissioner Blissenbach is statutorily required to enforce, and is enforcing, the Act, and maintains extensive authority to enter and investigate employer establishments investigate potential violations of the Act - and accordingly has a connection with the enforcement of the Act. Finally, Appellants admit Attorney General Ellison similarly has a connection in his ability to directly enforce the Act, and despite his claimed unwillingness to do so, he is statutorily obligated to enforce the Act. In sum, Appellants attempt to shield the Act from pre-enforcement review, necessarily chilling Appellees' speech, must fail. Because Appellants retain the ability to enforce the Act, and must or already are

enforcing the Act, the Eleventh Amendment does not bar this suit by virtue of sovereign immunity. The district court's conclusion to that end was reasoned and proper and should be upheld.

Dated:    February 3, 2025

/s/ Thomas R. Revnew
_____
Thomas R. Revnew, MN Bar No. 0295620
trevnew@littler.com
Kurt J. Erickson, MN Bar No. 158380
kerickson@littler.com
Jacob D. Multer, MN Bar No. 0401877
jmulter@littler.com

LITTLER MENDELSON, P.C.
1300 IDS Center
80 South 8th Street
Minneapolis, MN  55402.2136
Telephone:   612.630.1000
Facsimile:   612.630.9626

Attorneys for Plaintiffs-Appellees

**CERTIFICATE OF COMPLIANCE**
**WITH FRAP 32**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 31(a)(7)(B) because the brief contains 8,968 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(b) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 pt. Times New Roman font.


                                        /s/ *Thomas R. Revnew*
                                        Thomas R. Revnew

## CERTIFICATE OF COMPLIANCE WITH
## 8TH Cir. R. 28(A)(h)(2)

The undersigned, on behalf of the party filing and serving this brief, certifies

that the brief has been scanned for viruses and that it is virus-free.

/s/ *Thomas R. Revnew*
Thomas R. Revnew

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated:  February 3, 2025

*/s/ Thomas R. Revnew*
Thomas R. Revnew