# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-3116
_____

Minnesota Chapter of Associated Builders and Contractors; National Federation of Independent Business, Inc.; Laketown Electric Corporation

*Plaintiffs - Appellees*

v.

Keith M. Ellison, in his official capacity as Attorney General of Minnesota; Nicole Blissenbach, in her official capacity as the Commissioner of the Minnesota Department of Labor and Industry; Timothy Walz, in his official capacity as Governor of the State of Minnesota

*Defendants - Appellants*

------------------------------

Chamber of Commerce of the United States of America; National Association of Wholesaler-Distributors; National Retail Federation; Coalition for a Democratic Workplace

*Amici on Behalf of Appellee(s)*

_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: June 11, 2025
Filed: September 3, 2025
_____

Before LOKEN, ERICKSON, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

The Minnesota Chapter of Associated Builders and Contractors and two other associations (MNABC) sued Attorney General Keith Ellison, Department of Labor and Industry Commissioner Nicole Blissenbach, and Governor Timothy Walz seeking to enjoin the defendants from enforcing the "Employer-Sponsored Meetings or Communication Act." The district court denied the defendants' motion to dismiss for lack of subject matter jurisdiction based on state sovereign immunity. We reverse.

The Act is an anti-captive audience law which prohibits employers from "tak[ing] any adverse employment action against an employee" for "declin[ing]" to attend meetings or receive communications where an employer disseminates its opinion "about religious or political matters." Minn. Stat. § 181.531, subd. 1(1). It provides a private right of action for "aggrieved employee[s]," *id.* at subd. 2, and requires employers to post a "notice of employee rights" under the Act "within the workplace," *id.* at subd. 3(b). It was amended to require the Commissioner to "develop an educational poster providing notice of employees' rights provided." *Id.* at subd. 3(a).

Immediately after MNABC filed this lawsuit, the Attorney General and the Commissioner filed materially identical declarations stating each had "not enforced" or "threatened to enforce" the Act and had "no present intention to commence" enforcement proceedings. After it was amended, the Commissioner reaffirmed her previous declaration disavowing any intentions, past or present, to enforce the Act.

The Governor was not an original defendant, but after enactment, he told the audience at a trade union conference that "Minnesota was going to ban that practice, of having those captive anti-union meetings. You go to jail now if you do that in

Minnesota because you can't intimidate people." MNABC amended their complaint, adding the Governor as a defendant. While running for Vice President, the Governor continued to laud the Act: "We banned those damn captive-audience meetings for good in Minnesota. Last time I said that at a union meeting, they sued me over it. It was the best thing to get sued over I ever said. We're going to continue to ban those meetings." No one can be jailed under the Act, and everyone agrees that the Governor misstated the law.

The defendants asserted state sovereign immunity and moved to dismiss the complaint, factually attacking the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). The Governor and Commissioner argued they did not have "a sufficient connection to the Act's enforcement," and the Attorney General and Commissioner declared they did not have "present intent" to enforce the Act. The district court denied the motion, and the defendants bring this interlocutory appeal.

"We have jurisdiction over interlocutory appeals involving Eleventh Amendment immunity, which we review *de novo*." *Wolk v. City of Brooklyn Ctr.*, 107 F.4th 854, 858 (8th Cir. 2024) (citations omitted). In a factual attack on subject matter jurisdiction, we consider "'matters outside the pleadings,'" such as declarations, and the nonmoving party does "not enjoy the benefit of the allegations in its pleadings being accepted as true." *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 915 (8th Cir. 2015) (citation omitted).

"Generally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021). However, *Ex parte Young* provides a "narrow exception" by "allow[ing] certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law." *Id.* (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). To be a proper *Ex parte Young* defendant, the official must have "some connection with the enforcement" of the challenged law and "threaten and [be] about to commence proceedings." *Ex parte Young*, 209 U.S. at 156–57. We consider each defendant's

-3-

role—connection with enforcement and imminence—lest we "make the state a party" and violate its sovereign immunity. *Id.* at 157.

Beginning with the Governor, the district court held that his speeches "combined with the ability to remove a commissioner who might not feel as zealous about this law" is enough to make him an *Ex parte Young* defendant. *See* Minn. Stat. § 4.04, subd. 1 ("The governor shall appoint . . . all officers . . . whose selection is not otherwise provided for by law and, at pleasure, may remove any such appointee whose term of service is not by law prescribed."). But removal power does not have sufficient connection with enforcement of the Act. The Governor's power to remove the Commissioner is "incident[al]" to his power to appoint her. *See Krakowksi v. City of St. Cloud*, 101 N.W.2d 820, 825 (Minn. 1960). And a governor "appointing members of [a commission] is an administrative act" which "does not give [him] some connection" to enforcement. *Church v. Missouri,* 913 F.3d 736, 750 (8th Cir. 2019). Appointment or selection is "an administrative or ministerial" act—not an enforcement action within the meaning of *Ex parte Young*—because it is "not analogous to enforcing the [statute] through a civil or criminal prosecution." *Balogh v. Lombardi*, 816 F.3d 536, 546 (8th Cir. 2016). We see no legally significant distinction between appointment and removal: both are "administrative or ministerial" acts with an insufficient connection to enforcement. *See id.* ("[D]irector's authority *to define* the members . . . is not an enforcement action." (emphasis added)).

The "fiction" of *Ex parte Young* confirms that removal is an administrative or ministerial act. *See Church*, 913 F.3d at 747 (quoting *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011)). An *Ex parte Young* suit is brought against a state officer in his official capacity. 209 U.S. at 157. "[T]he relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself." *Lewis v. Clarke*, 581 U.S. 155, 162 (2017). Even if the Governor were to remove the Commissioner for her lack of zeal to enforce the Act, her successor would "automatically assume [her] role in the litigation" and would be bound by any ruling enjoining the Commissioner from enforcing the Act. *Id.*

-4-

Appointing or removing a commissioner is "too far removed" from enforcement to bring the Governor within the *Ex parte Young* exception. *See McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 996 (6th Cir. 2019) (Sutton, J.).

MNABC also defends the decision below by arguing the Governor has some connection with enforcement because he "may employ counsel to act in any action or proceeding if the attorney general is in any way interested adversely to the state." Minn. Stat. § 8.06. Since all parties agree that the Attorney General has some connection with enforcement, it stands to reason that counsel appointed under § 8.06 would too. While appointing and removing the Commissioner is an "administrative or ministerial" act not rising to the level of enforcement, "employ[ing]" outside counsel goes beyond merely appointing or removing a person to fulfill a statutory role. The appointed counsel would serve at the Governor's "direct[ion]," which provides the requisite "*method[]* of enforcement." *Church*, 913 F.3d at 749. MNABC does not argue that the Governor has made any overtures to employ outside counsel, even though the Attorney General has disavowed any present intent to enforce the Act. That the Governor "might in the future" appoint outside counsel and the appointed counsel "might then undertake enforcement action" against MNABC "is a series of hypotheticals" which cannot support an *Ex parte Young* suit against the Governor at this time. *See Whole Woman's Health*, 595 U.S. at 44.

Shifting to the Commissioner, the district court held that she is a proper *Ex parte Young* defendant because enforcement need not be "pure traditional prosecutorial authority" and the Act is "replete with examples of things that [she] does in support of the enforcement." Minnesota correctly argues that the Commissioner's duties under the Act are ministerial and not enforcement.

The Act empowers "[a]n aggrieved employee" to "bring a civil action to enforce this section." Minn. Stat. § 181.531, subd. 2. The Commissioner cannot. Instead, her only duty is to "develop an educational poster providing notice of employees' rights provided under this section." Minn. Stat. § 181.531, subd. 3(a). MNABC argues that this duty is like the one in *Worth v. Jacobson*, where we held

-5-

that "making application forms available on the internet" is a "dut[y] connected with [a] statute's enforcement." 108 F.4th 677, 684 n.3 (8th Cir. 2024). That statute criminalized carrying handguns in public places without a permit, and an applicant had to be "at least 21 years old" to apply for a permit. *Id.* at 683 (quoting Minn. Stat. § 624.717, subd. 2(b)(2)). The application forms were "key" to the State's enforcement of the statute because they required applicants to provide their dates of birth. *Id.* at 684 n.3. But developing an educational poster, while informing potentially aggrieved employees of their rights, does not facilitate any information enabling enforcement to flow back to the State. In other words, the State's enforcement machinery does not benefit from the development of the poster so it lacks "some connection" with enforcement. *See Whole Woman's Health*, 595 U.S. at 41 (holding clerks who "set in motion the 'machinery' of court proceedings" are not connected to enforcement).

MNABC argued below that the prefatory clause to the "Attorney General Enforcement" provision of the employment chapter gives the Commissioner enforcement authority. It states that "*[i]n addition to the enforcement of this chapter by the department*, the attorney general may enforce this chapter under section 8.31." Minn. Stat. § 181.1721 (emphasis added). But § 181.1721 "explicitly grant[s] *the Attorney General* power . . . to enforce the wage laws" of chapter 181. *Madison Equities, Inc. v. Off. of Att'y Gen.*, 967 N.W.2d 667, 672 (Minn. 2021) (emphasis added). The clause does not give the Commissioner independent authority to enforce the chapter, but instead refers to other provisions of the employment chapter where she is given explicit enforcement powers. *E.g.*, Minn. Stat. § 181.722, subd. 4(b) ("This section [prohibiting misrepresentation of employment relationship] may be investigated and enforced under the commissioner's authority under state law."); § 181.723, subd. 7(h) ("This section [prohibiting misclassification of construction employees] may be investigated and enforced under the commissioner's authority under state law.").

Moreover, the Act is not one of the enumerated sections of labor law with which the Legislature gave the Commissioner the power to "requir[e] an employer

-6-

to comply" and to "bring an action in the district court . . . to enforce or require compliance." Minn. Stat. § 177.27, subds. 4, 5. Interpreting the Attorney General Enforcement provision to grant the Commissioner enforcement authority over the entire employment chapter would render the Legislature's choice to grant the Commissioner enforcement authority over specific sections in § 177.27 superfluous. *See State v. Culver*, 941 N.W.2d 134, 141 n.3 (Minn. 2020) ("Whenever it is possible, no word, phrase, or sentence should be deemed superfluous, void, or insignificant." (citation omitted)).

The Commissioner also has the authority to "enter . . . and inspect places of employment" and to "investigate facts, conditions, practices or matters as the commissioner deems appropriate to enforce the laws" within her jurisdiction. Minn. Stat. § 175.20. Although this section is titled "Enforcement" and gives the Commissioner power "to enforce" the laws within her jurisdiction, the use of "enforce" is not dispositive. The substance of the law is. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544–45 (2012). Section 175.20 allows the Commissioner to "investigate" employers. Investigating an employer may increase an employer's compliance with the Act, but it "does not rise to the level of compulsion or constraint needed" for enforcement. *Mi Familia Vota v. Ogg*, 105 F.4th 313, 332 (5th Cir. 2024); *see also Jones v. Jegley*, 947 F.3d 1100, 1103 n.2 (8th Cir. 2020) (holding that investigating when paired with "lev[ying] fines" and "mak[ing] referrals to law enforcement" is "a 'strong enough' connection" to enforcement (citation omitted)). So the Commissioner does not have "some connection with the enforcement" of the Act to make her a proper *Ex parte Young* defendant as her role in the Act is "ministerial or administrative."

Last, the Attorney General. There is no dispute that he has power to enforce the Act, *see* Minn. Stat. § 181.1721, but the parties disagree whether he has sufficiently threatened to enforce the Act to make him a proper *Ex parte Young* defendant. The district court rejected his declaration disclaiming any past or "present intent[]" to commence proceedings, finding that "the imminent threats related to enforcement" from the Governor were "enough" for the Attorney General

to have enforcement intent. Minnesota argues that the district court erred when it transferred the Governor's enforcement intent to the Attorney General.

Under *Ex parte Young*, "*such* officer must have some connection" with enforcement "by virtue of *his* office." 209 U.S. at 157 (emphasis added); *see also Whole Woman's Health*, 595 U.S. at 45 (holding that some "defendants f[e]ll within the scope of *Ex parte Young*'s historic exception to state sovereign immunity" based upon their connection to S.B. 8 while relief against others was "foreclose[d]"). *Ex parte Young* "rests on the premise" that "a federal court command[ing] a state official to do nothing more than refrain from violating federal law" does not violate a state's sovereign immunity. *Stewart*, 563 U.S. at 255. This has always required an analysis of the defendant's specific role in enforcement or else it would merely be an "attempt[] to make the state a party." *See Ex parte Young*, U.S. at 157–61. So we must address whether the Attorney General's declaration is sufficient to disclaim any intent to enforce the Act.

We have held that the "proper standard" in assessing whether an officer is entitled to Eleventh Amendment immunity is whether his affidavit establishes his "'unwillingness to exercise [his] ability to prosecute'" a claim against the plaintiffs. *Minn. RFL Republican Farmer Lab. Caucus v. Freeman*, 33 F.4th 985, 992 (8th Cir. 2022) (citation omitted). In a factual attack, like the review of the preliminary injunction in *Freeman*, we "look outside the pleadings to affidavits or other documents" to establish jurisdictional facts by a preponderance of the evidence. *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018). In *Whole Woman's Health*, the Supreme Court did just that. When a private citizen defendant "supplied sworn declarations" attesting "he possess[ed] no intention" to enforce the statute, a unanimous Supreme Court held that plaintiffs "[could not] establish 'personal injury fairly traceable to [defendant's] allegedly unlawful conduct'" and remanded for the claims against this defendant to be dismissed for lack of standing. *Whole Woman's*

-8-

*Health*, 595 U.S. at 48 (citation omitted).[1]  This case is similar.  The Attorney General's declaration attests to having "no present intention to commence" enforcement, so MNABC lacks standing to sue, divesting the district court of subject matter jurisdiction.  *Auer v. Trans Union, LLC*, 902 F.3d 873, 877 (8th Cir. 2018); *see Yeransian v. B. Riley FBR, Inc.*, 984 F.3d 633, 637 (8th Cir. 2021) (affirming 12(b)(1) dismissal based on a factual attack because plaintiff lacked standing).

MNABC argues that the Attorney General's declaration does not "override" his statutory obligations.  "[S]ome duty in regard to the enforcement" is not enough: *Ex parte Young* also requires the officer to "threaten and [be] about to commence proceedings."  209 U.S. at 156.  By ignoring this "about to commence proceedings" requirement, MNABC's position effectively collapses the *Ex parte Young* exception to require only "some connection with the enforcement" of the Act.

Amicus refines MNABC's argument, asserting that the imminence of enforcement proceedings is irrelevant at the motion to dismiss stage.  *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court *need only* conduct a 'straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" (quotation omitted) (cleaned up)); *Whole Women's Health*, 595 U.S. at 45 (official "who *may* . . . take enforcement actions" is proper *Ex parte Young* defendant (emphasis added)).  This is true for facial attacks on jurisdiction where "the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)."  *Carlsen v. GameStop, Inc.*, 833 F.3d 903,

---

[1] Although this defendant was a private individual, the Fifth Circuit had held that his appeal was "inextricably intertwined" with the state defendants' Eleventh Amendment immunity claims.  *Whole Woman's Health v. Jackson*, 13 F.4th 434, 447 (5th Cir. 2021) (per curiam).  Before the Supreme Court, "no one contest[ed] this decision."  *Whole Woman's Health*, 595 U.S. at 48.  As the Eleventh Amendment provided appellate jurisdiction and the Supreme Court analyzed his defense in the same manner as other state defendants, we find the law apposite for a state officer.

908 (8th Cir. 2016) (citation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (plaintiffs must only plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" (citation omitted)). The same is not true for factual attacks where we "consider[] matters *outside* the pleadings." *Carlsen*, 833 F.3d at 908 (emphasis added). A defendant supplying a declaration is relevant to whether plaintiffs have standing.

We reverse and remand with instructions to dismiss with prejudice the claims against the Governor and Commissioner and to dismiss without prejudice the claim against the Attorney General.

LOKEN, Circuit Judge, dissenting.

This is a pre-enforcement action by private parties to enjoin the Minnesota Governor, Attorney General, and Commissioner of the Department of Labor and Industry (the Commissioner) from enforcing the Employer-Sponsored Meetings or Communication Act, Minn. Stat. § 181.531, an anti-captive audience law that prohibits Minnesota employers from discharging or otherwise penalizing an employee who declines to attend or participate in an employer-sponsored meeting or communication "to communicate the opinion of the employer about religious or political matters," as broadly defined. Under the Act, private individuals may bring a civil action to enforce its provisions, and the Attorney General and the Commissioner have independent enforcement authority. During a speech at a public employees convention in August 2024, the Governor stated, "We banned those damn captive-audience meetings for good in Minnesota. Last time I said that at a union meeting, they sued me over it. . . . We're going to continue to ban those meetings." Plaintiffs claim the Act regulates employer speech in violation of the First Amendment and is preempted by the federal National Labor Relations Act. Defendants argue they are entitled to Eleventh Amendment sovereign immunity.

As the court acknowledges, this interlocutory appeal turns on whether the "narrow exception" to Eleventh Amendment immunity that the Supreme Court

-10-

adopted in *Ex parte Young* applies to permit plaintiffs to seek a federal court order preventing the defendant executive officials from enforcing a state law that is contrary to federal law. Under prevailing Supreme Court authority, the answer to that difficult question turns on whether each official has "some connection with the enforcement" of the Act and has threatened or is about to commence enforcement proceedings. 209 U.S. 123, 156-57 (1908). *See Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 535-36, 544 (Roberts, C.J., concurring in the judgment and dissenting in part), 545 (Sotomayor, J., concurring in the judgment in part and dissenting in part). This is a complex, fact-intensive inquiry. In *Jones v. Jegley*, 947 F.3d 1100, 1103 n.2 (8th Cir. 2020), we concluded "a 'strong enough' connection" to enforcement was shown. In *Minnesota RFL Repub. Farmer Labor Caucus v. Freeman*, 33 F.4th 985, 992 (8th Cir. 2022), we concluded the defendants' showing that they had not enforced or threatened to enforce the statute at issue and affidavits stating they have no present intention to commence enforcement proceedings were sufficient to entitle them to immunity.

The district court ruled from the bench at the end of a lengthy hearing on defendants' motion to dismiss. The transcript of that hearing, RDoc 62, was filed September 20, 2024. After correctly stating the above-summarized standard for applying the *Ex parte Young* exception -- that each defendant has an adequate connection to enforcing or threatening to enforce the Act -- the court rejected the broad conflicting contentions of plaintiffs and the three defendants, denied plaintiffs' request that the court *sua sponte* grant summary judgment in their favor, and emphasized that further developments as the case progresses, including discovery, could change the landscape and cause the applicability of the *Ex parte Young* exception to be re-appraised. On the record before it, the court then concluded:

-- the Governor's authority to appoint and remove the Commissioner, and his speeches saying if you violate the law you will go to jail, "evince a commitment to enforcing the law and a threat of enforcing the law that is unique among all the cases I could find," a "robust tie to threatening to enforce the law;"

-11-

-- the Commissioner has an adequate connection to enforcing or threatening to enforce the Act because "the statute is replete with examples of things the commissioner does in support of enforcement of this law;" and

-- the Attorney General "actually has enforcement ability;" he "has taken the least action but has the strongest connection with the enforcement of this statute."

In this First Amendment case, the court further observed, "there is something unique about public threats to enforce this law" that creates extra concern for chilling protected speech. *Minnesota Chapter of Associated Builders and Contractors v. Timothy James Walz et al.*, File No. 24-cv-536, RDoc 62, Motion Hearing Tr. 35-44 (D. Minn. Sept. 20, 2024).

  In my view, the limited record on defendants' motion to dismiss fully supports the district court's analysis and conclusions. Whether the standard of review is *de novo* or abuse of discretion, I would affirm the denial of defendants' motion to dismiss based on state sovereign immunity for the reasons stated by the district court. Accordingly, I respectfully dissent.

_____