# No. 24-3116

# United States Court of Appeals
# for the Eighth Circuit

---

MINNESOTA CHAPTER OF ASSOCIATED BUILDERS AND CONTRACTORS, NATIONAL FEDERATION OF INDEPENDENT BUSINESS, INC., and LAKETOWN ELECTRIC CORPORATION,
*Plaintiffs - Appellees*,

v.

KEITH M. ELLISON, in his Official Capacity as Attorney General of Minnesota, NICOLE BLISSENBACH, in her Official Capacity as the Commissioner of the Minnesota Department of Labor and Industry, TIMOTHY WALZ, in his Official Capacity as Governor of the State of Minnesota
*Defendants - Appellants*

---

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, NATIONAL ASSOCIATION OF WHOLESALER-DISTRIBUTORS, NATIONAL RETAIL FEDERATION and COALITION FOR A DEMOCRATIC WORKPLACE

*Amica on Behalf of Appellee(s)*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
CASE NO. 0:24-cv-00536-KMM

## PLAINTIFFS-APPELLEES' PETITION FOR REHEARING EN BANC

Appellate Case: 24-3116    Page: 1    Date Filed: 09/17/2025 Entry ID: 5558951

Thomas R. Revnew, Bar No. 0295620 trevnew@littler.com
Kurt J. Erickson, Bar No. 158380
kerickson@littler.com
LITTLER MENDELSON, P.C. 1300 IDS Center
80 South 8th Street
Minneapolis, MN 55402.2136
Telephone: 612.630.1000 Facsimile: 612.630.9626

Jacob D. Multer, Bar No. 0401877
jmulter@littler.com
LITTLER MENDELSON, P.C. One Century Tower
265 Church Street; Suite 300
New Haven, CT 06510
Telephone: 203.974.8742 Facsimile: 203.643.2109

*Attorneys for Plaintiffs-Appellees*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... ii

STATEMENT UNDER FRAP 40(b)(2) ...................................................1

INTRODUCTION ....................................................................................2

FACTUAL BACKGROUND ....................................................................3

    I.    MINNESOTA ENACTS AN UNCONSTITUTIONAL STATUTE RESTRICTING EMPLOYER FREE-SPEECH.    3

    II.    PLAINTIFFS CHALLENGED THE ACT AS VIOLATING THE FIRST AMENDMENT AND BEING PREEMPTED UNDER THE NLRA, AND THE DISTRICT COURT PROPERLY DENIED DEFENDANTS-APPELLANTS' MOTION TO DISMISS BASED ON SOVEREIGN IMMUNITY.    4

    III.    A SPLIT PANEL OF THIS COURT REVERSED THE DISTRICT COURT.    7

ARGUMENT .............................................................................................8

    I.    THE DEFENDANTS-APPELLANTS HAVE SUFFICIENT CONNECTION WITH ENFORCEMENT OF THE ACT.    8

        A.    Governor Walz    8

        B.    Commissioner Blissenbach    11

        C.    AG Ellison    12

        D.    The Split Panel's Decision Conflicts With *Jegley*.    15

    II.    THIS CASE INVOLVES A QUESTION OF EXCEPTIONAL IMPORTANCE.    16

CONCLUSION ......................................................................................17

CERTIFICATE OF COMPLIANCE ....................................................19

CERTIFICATE OF SERVICE .............................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*,
729 F.3d 937 (9th Cir. 2013) ...............................................................1, 14

*Balogh v. Lombardi*,
816 F.3d 536 (8th Cir. 2016) ................................................................8, 9, 10

*Church v. Missouri*,
913 F.3d 736 (8th Cir. 2019) ................................................................8, 9

*First Nat'l Bank of Boston v. Bellotti*,
435 U.S. 765 (1978).................................................................................4

*Jones v. Jegley*,
947 F.3d 1100 (8th Cir. 2020)...............................................................*passim*

*K.P. v. LeBlanc*,
729 F.3d 427 (5th Cir. 2013) .................................................................14

*Minn. RFL Republican Farmer Lab. Caucus v. Freeman*,
33 F.4th 985 (8th Cir. 2022) .................................................................13

*Minnesota Chapter of Associated Builders & Contractors v. Ellison*,
No. 24-3116, 2025 WL 2526268 (8th Cir. Sept. 3, 2025)...................7, 8, 11, 12

*NRA v. Vullo*,
602 U.S. 175 (2024)...............................................................................14, 18

*Riley's Am. Heritage Farms v. Elsasser*,
No. 23-55516, 2024 WL 1756101 (9th Cir. Apr. 24, 2024)........................14, 15

*St. Paul Area Chamber of Commerce v. Gaertner*,
439 F.3d 481,485 (8th Cir. 2006) .........................................................15

*Universal Life Church Monastery Storehouse v. Nabors*,
35 F.4th 1021 (6th Cir. 2022) ...........................................................1, 9, 10, 14

*Whole Woman's Health v. Jackson*,
142 S. Ct. 522.........................................................................................8

ii

*Whole Woman's Health v. Jackson*,
595 U.S. 30 (2021) ..................................................................1, 7, 8, 16

*Worth v. Jacobson*,
108 F.4th 677 (8th Cir. 2024) .............................................1, 11, 12

*Ex parte Young. Reprod. Health Servs. Of Planned Parenthood of St.
Louis Region, Inc. v. Nixon*,
428 F.3d 1139 (8th Cir. 2005) ..................................................12

*Ex parte Young*,
209 U.S. 123 (1908) ...........................................................*passim*

**Statutes**

29 U.S.C. § 158(c) ...................................................................4

Minn. Stat. § 8.31, subd. 1 ......................................................13

Minn. Stat. § 181.531 ............................................................2, 3

Minn. Stat. § 181.531, subd. 1 ..................................................3

Minn. Stat. § 181.531, subd. 2 ..................................................4

Minn. Stat. § 181.531, subd. 3(a) ...............................................5

Minn. Stat. § 181.531, subd. 5 ..................................................4

Mo. Stat. § 600.015 ................................................................9

**Other Authorities**

2023, Reg. Sess., ch. 53, art. 11, § 25 (effective August 1, 2023) ........3, 4

Sixth Amendment ...................................................................9

Eleventh Amendment.....................................................2, 5, 8, 14

Federal Rule of Appellate Procedure 40 .......................................1

FRAP 40(b)(2) ........................................................................1

Local Rule 35A .......................................................................1

Appellate Case: 24-3116    Page: 5    Date Filed: 09/17/2025 Entry ID: 5558951

National Labor Relations Act ...................................................................2, 4

First Amendment to the U.S. Constitution ......................................................*passim*

iv

Pursuant to Federal Rule of Appellate Procedure 40, and Eighth Circuit Local Rule 35A, Plaintiffs-Appellees, Minnesota Chapter of Associated Builders and Contractors ("MNABC"), National Federation of Independent Business ("NFIB"), and Laketown Electric Corporation ("Laketown") request rehearing *en banc* of the panel's September 3, 2025 decision in this matter.

## STATEMENT UNDER FRAP 40(b)(2)

Under Fed. R. App. P. 40(b)(2), e*n banc* review is appropriate to maintain and secure uniformity with decisions of the United States Supreme Court, decisions within the Eighth Circuit and other Circuits, and because this case involves questions of exceptional importance regarding the exception to the 11th Amendment's Sovereign Immunity Clause outlined in *Ex parte Young*, 209 U.S. 123 (1908) as applied to the fundamental right to First Amendment free speech.

The split panel's decision conflicts with the Supreme Court's decision in *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021) as well as prior decisions of this Circuit, including *Jones v. Jegley*, 947 F.3d 1100 (8th Cir. 2020), and *Worth v. Jacobson*, 108 F.4th 677 (8th Cir. 2024). The panel's decision also conflicts with authoritative decisions of other United States Courts of Appeals, including *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937 (9th Cir. 2013) and *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021 (6th Cir. 2022).

Appellate Case: 24-3116    Page: 7    Date Filed: 09/17/2025 Entry ID: 5558951

*En banc* review is required to maintain a uniform standard in this Circuit and in the United States for determining when State officials are entitled to 11th Amendment sovereign immunity when restricting free speech.

## INTRODUCTION

Plaintiffs sued Defendants-Appellants, Minnesota Governor Timothy Walz ("Governor Walz"), Minnesota Attorney General Keith Ellison ("AG Ellison"), and Minnesota Department of Labor and Industry Commissioner Nicole Blissenbach ("Commissioner Blissenbach"), seeking a declaration that Minn. Stat. § 181.531 (the "Act") violates the First Amendment to the U.S. Constitution, and is preempted by the National Labor Relations Act ("NLRA").

The Act prohibits employers from speaking to employees regarding broadly defined "religious" and "political" matters. Defendants have the ability to, have threatened to, and have enforced the Act. By virtue of their retained power, threats of enforcement, and actual enforcement, Defendants-Appellants forfeited their Eleventh Amendment sovereign immunity. Governor Walz has made numerous public threats to enforce the Act, while his appointee (whom he retains authority to direct), Commissioner Blissenbach, is statutorily required to and currently is enforcing the Act. For his part, AG Ellison retains power to enforce the Act and is statutorily required to do so. The district court correctly concluded that each Defendant-Appellant fell within the *Ex parte Young* exception.

# FACTUAL BACKGROUND

**I.    MINNESOTA ENACTS AN UNCONSTITUTIONAL STATUTE RESTRICTING EMPLOYER FREE-SPEECH.**

On May 17, 2023, the Act became law in Minnesota.  Minn. Stat. § 181.531[1].

The Act prohibits Minnesota employers from discharging, disciplining, penalizing or threatening to discharge, discipline, or penalize an employee:

> (1) because the employee declines to attend or participate in an employer-sponsored meeting or declines to receive or listen to communications from the employer or the agent, representative, or designee of the employer if the meeting or communication is to communicate the opinion of the employer about religious or **political matters**;
>
> (2) as a means of inducing an employee to attend or participate in meetings or receive or listen to communications described in clause (1); or
>
> (3) because the employee, or a person acting on behalf of the employee, makes a good-faith report, orally or in writing, of a violation or a suspected violation of this section.

*See*, Minn. Stat. § 181.531, subd. 1 (emphasis added)

The Act broadly defines political matters as follows:

> (1) "political matters" means matters relating to elections for political office, political parties, proposals to change legislation, proposals to change regulations, proposals to change public policy, and the decision to join or support any political party or political, civic, community, fraternal, or labor organization; and

---

[1] *See* Act of May 24, 2023, Reg. Sess., ch. 53, art. 11, § 25 (effective August 1, 2023).

Minn. Stat. § 181.531, subd. 5.

The Act also requires employers to post a notice of employee rights under the Act in places where employee notices are customarily posted.[2] Under the Act, private individuals may bring a civil action to enforce its provisions. Minn. Stat. § 181.531, subd. 2.

## II. PLAINTIFFS CHALLENGED THE ACT AS VIOLATING THE FIRST AMENDMENT AND BEING PREEMPTED UNDER THE NLRA, AND THE DISTRICT COURT PROPERLY DENIED DEFENDANTS-APPELLANTS' MOTION TO DISMISS BASED ON SOVEREIGN IMMUNITY.

In February 2024, Plaintiffs-Appellees filed their initial Complaint, seeking relief because the Act regulates and forbids speech, violating Plaintiffs' First Amendment rights. *First Nat'l Bank of Boston v. Bellotti,* 435 U.S. 765, 776 (1978).[3] Furthermore, Plaintiffs sought relief because the Act regulates employer speech in a manner prohibited under the NLRA.[4] *See, e.g.*, 29 U.S.C. § 158(c).

On April 23, 2024, after the initial Complaint was filed, Governor Walz told the North America's Building Trades Unions, "Minnesota was going to ban that practice, of having those captive anti-union meetings [referring to the Act]. ***You go to jail now if you do that in Minnesota*** because you can't intimidate people."[5] After that speech, Governor Walz signed into law an amendment to the Act, requiring

---

[2] *Id.*
[3] App. 21; R. Doc. 1 at ¶ 31.
[4] App. 21; R. Doc. 1 at ¶ 41.
[5] App. 213; R. Doc. 58 at ¶ 32.

Commissioner Blissenbach to develop the notice of employee rights under the Act that Minnesota employers must post.[6]  *See* Minn. Stat. § 181.531, subd. 3(a). Thereafter, on August 13, 2024, Governor Walz gave another speech at a convention held by the American Federation of State, County, and Municipal Employees.[7] During his speech, Governor Walz stated: "***We*** banned those damn captive-audience meetings for good in Minnesota. Last time I said that at a union meeting, they sued me over it. It was the best thing to get sued over I ever said. ***We're going to continue to ban those meetings***."[8] Governor Walz made these statements, referring to Commissioner Blissenbach and his administration, that "***we***" intend to enforce the Act.[9]  The Complaint was amended twice considering these events.

Defendants-Appellants moved to dismiss the Complaint, arguing they were entitled to Eleventh Amendment sovereign immunity.[10]  At the conclusion of the hearing, the district court ruled from the bench and denied Defendants' Motion to Dismiss as to all three defendants, holding that each Defendant fell within the sovereign immunity exception outlined in *Ex parte Young*, 209 U.S. 123 (1908).[11]

---

[6] App. 216; R. Doc. 58 at ¶ 40.

[7] App. 214; R. Doc. 58 at ¶ 36.

[8] App. 214; R. Doc. 58 at ¶ 36 (emphasis added)

[9] App. 214; R. Doc. 58 at ¶ 36.

[10] *See Transcript of District Court Hearing*, September 16, 2024 ("Tr."), 1-50; R. Doc. 62 at 1-50.

[11] Tr. 35-45; R. Doc. 62 at 35-45.

The district court ruled Governor Walz has a connection to the Act because he can appoint **and** remove Commissioner Blissenbach, which distinguished this case from other Eighth Circuit cases.[12] Additionally, the district court found Governor Walz is actually threatening to enforce the Act.[13] Governor Walz made undisputed statements, referring to Commissioner Blissenbach and his administration, that "*we*" intend to enforce the Act.[14]

The district court also found Commissioner Blissenbach was not entitled to sovereign immunity because the Commissioner has an adequate tie to enforcement of the Act by virtue of [15] the numerous actions the Commissioner takes in support of the enforcement of this law, and "there's no suggestion [in case law] that it has to be simply a pure traditional prosecutorial authority to count as sufficient tie to the enforcement of the law."[16] The district court found the fact that Commissioner Blissenbach prepared and posted a notice informing employees of their rights under the Act on the DOLI website, and also acknowledged she would refer employees to private attorneys to enforce the Act established enforcement of the Act within the

---

[12] Tr. at 38:11-16, R. Doc. 62 at 38:11-16.

[13] Tr. at 38:17-25, 39:1-7; R. Doc. 62 at 38:17-25, 39:1-7.

[14] App. 214; R. Doc. 58 at ¶ 36.

[15] Tr. at 41:1-3; R. Doc. 62 at 41:1-3.

[16] Tr. at 41:1-15; R. Doc. 62 at 41:1-15.

Appellate Case: 24-3116    Page: 12    Date Filed: 09/17/2025 Entry ID: 5558951

meaning of *Ex parte Young*,[17] citing *Doe vs. DeWine*, 910 F.3d 842 (6th Cir. 2018) and *Jones v. Jegley*, 947 F.3d 1100 (8th Cir. 2020).

Finally, the district court found that AG Ellison retains authority to enforce the Act, and because his co-defendants are enforcing and threatening to vigorously enforce the Act, AG Ellison fell within the *Ex parte Young* exception pursuant to *Whole Woman's Health*, 595 U.S. 30 (2021).[18]

## III. A SPLIT PANEL OF THIS COURT REVERSED THE DISTRICT COURT.

On September 3, 2025, a split panel of this Court issued a decision reversing the district court. *See Minnesota Chapter of Associated Builders & Contractors v. Ellison*, No. 24-3116, 2025 WL 2526268 (8th Cir. Sept. 3, 2025).

The split panel held Governor Walz's ability to appoint ***and remove*** Commissioner Blissenbach did not give him a connection to the Act's enforcement under *Ex parte Young*. *Id.* at *2. Further, the split panel held that Commissioner Blissenbach's duties under the Act are "ministerial" because, in part, the Commissioner's duty to develop an education poster, "does not facilitate any information enabling enforcement to flow back to the state." *Id.* at *3. Lastly, the split panel held Attorney General Ellison's declaration disclaiming any intent to

---

[17] Tr. at 41:1-15; R. Doc. 62 at 41:1-15.
[18] Tr. at 43:1-25, 44:1-9; R. Doc. 62 at 43:1-25, 44:1-9.

Appellate Case: 24-3116    Page: 13    Date Filed: 09/17/2025 Entry ID: 5558951

enforce the Act overrode his statutory obligations to the contrary, such that he is not threatening to commence proceedings against Plaintiffs. *Id.* at *4-5.

Critically, Judge Loken dissented to the panel holding – stating that "the limited record on defendants' motion to dismiss **fully supports** the district court's analysis and conclusions." *Id.* at *6.

## **ARGUMENT**

### I. **THE DEFENDANTS-APPELLANTS HAVE SUFFICIENT CONNECTION WITH ENFORCEMENT OF THE ACT**.

The split panel's decision conflicts with the Supreme Court's decision in *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021). The "narrow exception" to Eleventh Amendment immunity adopted by the Supreme Court in *Ex parte Young* applies in this case. Under prevailing Supreme Court authority and authority from this Court, as referenced by Judge Loken in his dissent, each official has "some connection with the enforcement" of the Act and has threatened or is about to commence enforcement proceedings. 209 U.S. 123, 156-57 (1908). *See Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 535-36, 544.

### A. **Governor Walz**

Governor Walz statements clearly threatened to enforce the law, and he can remove the Commissioner, who might not feel as zealous about the law, to enforce the law. Nevertheless, the split panel held Governor Walz's power to remove Commissioner Blissenbach "does not have sufficient connection with enforcement

of the Act." *Ellison*, 2025 WL 2526268 at *2. The split panel cited *Church v. Missouri*, 913 F.3d 736, 750 (8th Cir. 2019) and *Balogh v. Lombardi*, 816 F.3d 536, 546 (8th Cir. 2016) for the proposition that Governor Walz's ability to remove and appoint the DOLI Commissioner is an administrative act not connected with enforcement of the law.

In *Church*, however, the Missouri governor could ***appoint***, but not remove, public defender commission members. *Church*, 913 F.3d at 750; Mo. Stat. § 600.015 ("The commission shall be composed of seven members, four of whom shall be lawyers, appointed by the governor with the advice and consent of the senate."). The plaintiffs argued the governor, along with a public defender commission and its members, violated the Sixth Amendment by failing to adequately fund the public defender commission and therefore failed to provide indigent defendants with adequate representation. The plaintiffs further argued the governor had sufficient connection with the statute's enforcement because of his ability to appoint members of the commission. *Church* did not concern the power of the governor to ***remove*** the commission's members, nor did it even concern a failure to enforce a challenged statute.

*Balogh* involved the Missouri Department of Corrections Director's ability to select state's execution team members, who in turn, were permitted under Missouri law to sue any person who knowingly disclosed their identity. *Balogh*, 816 F.3d at

540. This Court held because the director's ability to select the execution team had "nothing to do with an execution team member's potential prosecution" of someone who disclosed their identity, the director did not have a sufficient connection to the statute's enforcement. *Id*. at 546.

The district court recognized the facts here stand in marked contrast to those set forth in *Balogh* and *Church*. Whereas in *Balogh,* the director's selection of the execution team had "nothing to do with an execution team member's potential prosecution," Governor Walz's ability to remove and appoint a new DOLI Commissioner has ***everything*** to do with the Commissioner's potential enforcement of the Act. Governor Walz's ability to remove the Commissioner is not simply administrative – he can remove any Commissioner who refuses to enforce the Act and appoint one who will do so. Unlike the instant case, the director in *Balogh* could not remove members who declined to prosecute disclosures of their personal identity.

And the ***removal*** power is what makes the ultimate difference. Wielded by the Governor, it is a power which may be used to ensure the Act's enforcement. If the Commissioner directs a subordinate to investigate wage theft violations in Minnesota, the Commissioner is still connected with enforcement even though she is not doing the investigation herself. It is the direction itself enabling enforcement which provides the requisite connection. The same is true here. The Governor's

Appellate Case: 24-3116    Page: 16    Date Filed: 09/17/2025 Entry ID: 5558951

power to remove and appoint a DOLI Commissioner who will enforce the Act enables enforcement in the first instance.  The enforcement flows directly from the Governor's act himself.  He is connected with enforcement of the Act and the split panel's decision contradicts this Court's prior holdings.

### B.    Commissioner Blissenbach

Similarly, Commissioner Blissenbach is connected to and is enforcing the law by publishing the captive audience poster, which employers must post.  Contrary to this Court's decision in *Worth v. Jacobson*, 108 F.4th 677, 684, n.3 (8th Cir. 2024), the split panel held the Commissioner's statutory requirement to develop a poster apprising employees of their rights under the Act did not constitute sufficient connection with enforcement of the Act.   In *Jacobson*, this Court held making application forms available on the internet constituted sufficient connection with enforcement of a law to override Sovereign Immunity. *Id*. The split panel here found in contrast to *Jacobson* that "developing an educational poster… does not facilitate any information enabling enforcement to flow back to the State.  In other words, the State's enforcement machinery does not benefit from the development of the poster so it lacks 'some connection' with enforcement."  *Ellison*, 2025 WL 2526268 at *3.

But the Commissioner's poster ***does*** enable information enforcement to flow back to the State - the poster itself contains DOLI's phone number and e-mail address for individuals to contact DOLI and report violations. Once contacted by an

individual, the Commissioner may, and as she has stated she would, refer individuals to private attorneys to enforce the Act, or she may refer the matter to the Attorney General. The State's interest in enforcing the Act to unconstitutionally stifle employer speech is directly benefited by the Commissioner's poster.

The split panel also held that the Commissioner's power to "enter… and inspect places of employment" and to "investigate facts, conditions, practices or matters as the commissioner deems appropriate to enforce the laws" does not provide connection with the Act's enforcement. This Court has held the opposite, previously finding the power to investigate, as well as to levy fines and make referrals to law enforcement, was sufficient connection to enforcement of the law. *Jones v. Jegley*, 947 F.3d 1100, 1103 n.2 (8th Cir. 2020)

Commissioner Blissenbach has the power to both investigate ***and*** refer potential violations to the Attorney General for enforcement – just as in *Jegley*. Indeed, this Court has held where Missouri's attorney general could only participate in a criminal proceeding if his assistance was requested by the assigned county attorney or the trial court asked him to sign indictments, such connection was sufficient under *Ex parte Young*. *Reprod. Health Servs. Of Planned Parenthood of St. Louis Region, Inc. v. Nixon*, 428 F.3d 1139, 1145 (8th Cir. 2005).

The panel's holding conflicts with *Worth* and *Jegley*, and it was in error.

### C. AG Ellison

Appellate Case: 24-3116    Page: 18    Date Filed: 09/17/2025 Entry ID: 5558951

Finally, the split panel held because AG Ellison established an unwillingness to prosecute claims under the Act, he was not a proper party pursuant to *Ex parte Young*. *Ellison*, 2025 WL 2526268 at *4. The panel cited *Minn. RFL Republican Farmer Lab. Caucus v. Freeman*, 33 F.4th 985, 992 (8th Cir. 2022), in which this Court held the attorney general's sworn declaration disclaiming any intent to enforce a statute was dispositive of the issue.

But in *Freeman*, the attorney general was not *statutorily required* to enforce the law at issue. Here, AG Ellison has no such discretion – he ***must*** enforce the Act. Minn. Stat. § 8.31, subd. 1 ("The attorney general ***shall*** investigate violations of the law of this state respecting unfair, discriminatory, and other unlawful practices in business, commerce, or trade….") (emphasis added). To disclaim intent to enforce the Act results in Attorney General Ellison violating Minnesota law.

The split panel skirts this issue by finding that Attorney General Ellison has not threatened to, nor is he about to, commence proceedings. In doing so, the panel ignores Supreme Court precedent and other Circuit Court precedent.

In *Whole Women's Health,* a Supreme Court supermajority held the *Ex parte Young* exception permitted the plaintiffs' claim to proceed against three "executive licensing official[s] who ***may*** or must take enforcement actions against the petitioners if they violate the terms of Texas's Health and Safety Code." *Id*. at 535 (emphasis added). Indeed, Chief Justice Roberts clearly stated eight Justices agreed

Appellate Case: 24-3116   Page: 19   Date Filed: 09/17/2025 Entry ID: 5558951

the suit could proceed because "there exist state executive officials who retain authority to enforce [the law]." *Id.* at 544. In the First Amendment context, this is consistent with *NRA v. Vullo*, 602 U.S. 175, 190 (2024) where the Court explained that government cannot edit speech directly or indirectly.

And both the Sixth and Ninth Circuits hold when state officials have a statutory duty to enforce the law, that duty renders such officials proper parties under *Ex parte Young*, even where no evidence exists of truly *imminent* enforcement. *See Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013) (attorney general's ***duty*** to prosecute violations of challenged statute foreclosed Eleventh Amendment immunity); *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1040 (6th Cir. 2022) (district attorneys general not entitled to immunity where they had authority and ***duty*** to enforce challenged statute).

Similarly, the Fifth and Ninth Circuits hold state officials cannot do an end-run around live controversies by halting their conduct in the face of litigation and claiming immunity. In *K.P. v. LeBlanc*, 729 F.3d 427 (5th Cir. 2013), state defendants argued the "ongoing" violation of the federal Constitution ceased mid-litigation, re-instituting their sovereign immunity. The Fifth Circuit disagreed: "Their theory, if accepted, would work an end-run around the voluntary-cessation exception to mootness where a state actor is involved." *Id.* at 439. The Ninth Circuit

found the same in *Riley's Am. Heritage Farms v. Elsasser*, No. 23-55516, 2024 WL 1756101 (9th Cir. Apr. 24, 2024). There, the Court determined a state official's voluntary cessation of unlawful conduct does not moot the "ongoing" harm: "We… decline to let state actors end-run live disputes by voluntarily stopping conduct in the fact of litigation and then claiming immunity." *Id.* at *2.

The same is true here. AG Ellison cannot end-run around a live controversy by disclaiming intent to enforce a law that he is statutorily obligated to enforce. His sworn declaration cannot override the command of the legislature.

### D. The Split Panel's Decision Conflicts With *Jegley*.

As referenced by Judge Loken, the split panel's opinion conflicts with *Jones v. Jegley*, 947 F.3d 1100, 1103 n.2 (8th Cir. 2020) where the Court concluded "a 'strong enough' connection" to enforcement was shown because the plaintiff was chilled in her free-speech rights, which included financially supporting a candidate of her choosing. In *Jegley*, this Court recognized that it has repeatedly rejected the argument that a plaintiff must risk prosecution before challenging a statute under the First Amendment. 947 F.3d at 1104 (citing, *TelescopeMedia Grp.*, 936 F.3d at 749; *281 CareComm.*, 638 F.3d at 627; *St. Paul Area Chamber of Commerce v. Gaertner*, 439 F.3d 481, 485 (8th Cir. 2006). The Defendants-Appellants should not be able to avoid review of a statute that chills employers' speech and forces them to risk prosecution before any challenge to the Act can be made.

## II.   THIS CASE INVOLVES A QUESTION OF EXCEPTIONAL IMPORTANCE.

Finally, this case presents a question of exceptional importance.  Specifically, this case addresses whether a State can insulate itself after enacting a clearly unconstitutional statute and avoid pre-enforcement review by passing enforcement power to private citizens.  As noted above, the Supreme Court answered this question in *Whole Woman's Health* and closed this loophole, which the split panel decision threatens to "reopen."

Both Minnesota, through the Act, and Texas in *Whole Woman's Health*, believe they found a loophole to *Ex parte Young*.  Like Texas, Minnesota believes it has found a workaround by passing on primary enforcement ability to private citizens.  Allowing such gamesmanship invites States to promulgate laws that restrict the constitutional rights of citizens without recourse.  Here, citizens are forced to face a choice: 1) avoid taking any action which may violate the statute and subject them to an individual's suit; or 2) continue taking such actions, and expose themselves to civil liability, including the significant costs of litigation.  No option exists for individuals to preemptively challenge a statute by filing suit against state authorities to seek a declaration that the statute is unconstitutional – chilling Constitutional rights.

This Court has held a plaintiff need not "risk prosecution before challenging a statute under the First Amendment."  *Jegley*, 947 F.3d at 1104.  The split panel's

decision conflicts with that basic premise which underlies the fabric of the United States' Constitutional framework. To allow such a state of affairs to continue will undoubtedly result in a patchwork of State laws that unconstitutionally restrict and chill the rights of citizens.

## **<u>CONCLUSION</u>**

AG Ellison's press release on the panel decision underscores why rehearing *en banc* should be granted. He celebrates the chilling and State policing of employer speech[19]:

> "Today's ruling is a win for working people across Minnesota," **said Attorney General Ellison.** "Employees should not be forced to attend meetings that push their boss' political or religious views. Similarly, if workers are trying to form a union, management should not be able to hold mandatory meetings to spread anti-union propaganda and retaliate against workers who refuse to attend. The whole purpose of unions is to create a more level playing field at the workplace by empowering workers to act collectively. It would be fundamentally unjust and unfair to allow management to weaponize the disproportionate power they have in the workplace to hold mandatory, anti-union meetings in an attempt to stop a union from forming in the first place."
>
> One key feature of Minnesota's ban on captive audience meetings is a private right of action, meaning that individuals can file a lawsuit if their rights have been violated. In celebrating today's victory, Attorney General Ellison reminded workers that the law remains on the books and continues to protect employees from being demoted, suspended, fired, or otherwise punished for not attending political, religious, or anti-union meetings.

---

[19] https://www.ag.state.mn.us/Office/Communications/2025/09/03_CaptiveAudience.asp (last visited September 15, 2025).

Appellate Case: 24-3116    Page: 23    Date Filed: 09/17/2025 Entry ID: 5558951

AG Ellison is touting the law is working as intended in defiance of *Whole Women's Health*. And AG Ellison is making crystal clear that, in defiance of the First Amendment and *Vullo*, 602 U.S. at 190, Minnesota will itself determine which speech is permissible and which is not, while trying to give the appearance that it is not getting its hands dirty doing so.

Plaintiffs-Appellees either have First Amendment protections to free speech, or they don't. Confident that such protections remain, Plaintiffs-Appellees request rehearing *en banc* of the panel's September 3, 2025 decision in this matter.

Respectfully submitted,

Dated: September 17, 2025

*/s/ Thomas R. Revnew*

Thomas R. Revnew, Bar No. 0295620
trevnew@littler.com
Kurt J. Erickson, Bar No. 158380
kerickson@littler.com
LITTLER MENDELSON, P.C.
1300 IDS Center, 80 South 8th Street
Minneapolis, MN 55402.2136
Telephone: 612.630.1000
Facsimile: 612.630.9626

Jacob D. Multer, Bar No. 0401877
jmulter@littler.com
LITTLER MENDELSON, P.C.
One Century Tower
265 Church Street; Suite 300
New Haven, CT 06510
Telephone: 203.974.8742
Facsimile: 203.643.2109

*Attorneys for Plaintiffs-Appellees*

Appellate Case: 24-3116   Page: 24   Date Filed: 09/17/2025 Entry ID: 5558951

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 40 of the Federal Rules of Appellate Procedure and Circuit Rule 40-1, the foregoing brief is in 14-Point Times New Roman proportional font and contains 3,848 words, excluding the parts of the brief exempted by Rule 32(f), and thus is in compliance with the requirements of FRAP 40(d)(3)(A), which provides that petitions for rehearing may not exceed 3,900 words.

Dated: September 17, 2025

*/s/ Thomas R. Revnew*
Thomas R. Revnew, Bar No. 0295620

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 17, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: September 17, 2025

*/s/ Thomas R. Revnew*
Thomas R. Revnew, Bar No. 0295620

4932-3574-3850 / 121551.1001