No. 24-3116

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

_____

Minnesota Chapter of Associated Builders and Contractors, et al.

Plaintiffs - Appellees,

vs.

Keith Ellison, in his official capacity as Attorney General of Minnesota, et al.

Defendants - Appellants.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
CASE NO. 0:24-CV-00536-KMM

_____

**DEFENDANTS-APPELLANTS' RESPONSE TO
PETITION FOR REHEARING EN BANC**

_____

KEITH ELLISON
Attorney General
State of Minnesota

Nick Pladson (MN #0388148)
Benjamin Harringa (MN #0399254)
Assistant Attorneys General
445 Minnesota Street, Suite 600
St. Paul, MN 55101-2131
T: (651) 300-7083
nick.pladson@ag.state.mn.us

*Attorneys for Defendants-Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ............................................................................................... 1

ARGUMENT ........................................................................................................ 2

I.  THE PANEL MAJORITY CORRECTLY APPLIED *EX PARTE YOUNG* TO UNDISPUTED FACTS ........................................................................................... 2

    A.  Governor Walz and Commissioner Blissenbach Lack a Nexus with the Act's Enforcement ........................................................................... 2

        1.  Governor Walz Lacks Any Enforcement Connection ................ 2

        2.  Commissioner Blissenbach Lacks Any Enforcement Connection ............................................................................................. 4

            a.  Commissioner Blissenbach's Educational Poster is Not "Some Connection" to the Act's Enforcement .......... 5

            b.  The Panel Correctly Distinguished *Jones v. Jegley* ......... 6

            c.  Even Assuming "Some Connection," Commissioner Blissenbach's Sworn Disavowals Defeat *Young*'s Second Element ....................................... 7

    B.  The Panel Correctly Required a Specific and Imminent Threat of Enforcement to Satisfy *Young* ............................................................. 8

        1.  The Panel Properly Credited Attorney General Ellison's Disavowal and Found No Enforcement Threat ......................... 8

II. THIS CASE IS NOT EXCEPTIONALLY IMPORTANT ........................................... 12

    A.  There is No Intra-Circuit Conflict ....................................................... 14

    B.  There is No Circuit-Split .......................................................................... 15

CONCLUSION ........................................................................................17

CERTIFICATE OF COMPLIANCE ......................................................18

CERTIFICATE OF SERVICE ...............................................................19

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*281 Care Comm. v. Arneson*,
   766 F.3d 774 (8th Cir. 2014).......................................................... 9, 16

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*,
   729 F.3d 937 (9th Cir. 2013)........................................................... 16

*Becker v. N. Dakota Univ. Sys.*,
   112 F.4th 592 (8th Cir. 2024) ........................................................... 9

*Bio Gen LLC v. Sanders*
   142 F.4th 591 (8th Cir. 2025) ........................................................... 3

*Blatchford v. Native Vill. of Noatak & Circle Vill.*,
   501 U.S. 775 (1991) ........................................................................ 14

*California Chamber of Com. v. Bonta*,
   No. 2:24-CV-03798-DJC, 2025 WL 2779355 (E.D. Cal. Sept. 30, 2025).......... 15

*Calzone v. Hawley*,
   866 F.3d 866 (8th Cir. 2017)............................................................. 6

*Christian Action League of Minn. v. Freeman*,
   143 S. Ct. 304 (2022) ....................................................................... 9

*Church v. Missouri*,
   913 F.3d 736 (8th Cir. 2019)....................................................... 2, 3, 4

*Dace v. ACF Indus., Inc.*,
   728 F.2d 976 (8th Cir. 1984)............................................................. 8

*Digital Recognition Network, Inc. v. Hutchinson*,
   803 F.3d 952 (8th Cir. 2015)........................................................ 5, 12

*Duit Const. Co. Inc. v. Bennett*,
   796 F.3d 938 (8th Cir. 2015) .................................................................. 14

*Ex parte Young*,
   209 U.S. 123 (1908) .................................................................... passim

*Filyaw v. Corsi*,
   150 F.4th 936 (8th Cir. 2025) .................................................................. 8

*Illinois Pol'y Inst. v. Flanagan*,
   No. 24-cv-06976, 2025 WL 2900516 (N.D. Ill. Sept. 30, 2025) ........................ 2

*In re Hen House Interstate, Inc.*,
   177 F.3d 719 (8th Cir. 1999) .................................................................. 5

*Jones v. Jegley*
   947 F.3d 1100 (8th Cir. 2020) ................................................... 6, 7, 9, 14

*Jones v. United States*,
   727 F.3d 844 (8th Cir. 2013) ................................................................. 11

*K.P. v. LeBlanc*,
   729 F.3d 427 (5th Cir. 2013) ............................................................ 15, 16

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ........................................................................... 14

*Mi Familia Vota v. Ogg*,
   105 F.4th 313 (5th Cir. 2024) ................................................................ 11

*Minn. RFL Republican Farmer-Labor Caucus v. Freeman*,
   33 F.4th 985, 992 (8th Cir. 2022) ................................................... 8, 9, 16

*Minn. RFL Republican Farmer-Labor Caucus v. Moriarty*,
   108 F.4th 1035 (8th Cir. 2024) ............................................................... 9

*Minn. RFL Republican Farmer-Labor Caucus v. Moriarty*,
   No. 23-1563, 2024 WL 3929990 (8th Cir. Aug. 26, 2024) ............................... 9

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992) ........................................................................ 10

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) ..................................................................... 12, 13

*Reprod. Health Servs. of Planned Parenthood of St. Louis Region, Inc. v. Nixon*,
  428 F.3d 1139 (8th Cir. 2005)................................................. 10, 11, 16

*Turtle Island Foods, SPC v. Thompson*,
  992 F.3d 694 (8th Cir. 2021)........................................................... 14

*Universal Life Church Monastery Storehouse v. Nabors*,
  35 F.4th 1021 (6th Cir. 2022)......................................................... 16

*W. Pac. R.R. Corp. v. W. Pac. R.R. Co.*,
  345 U.S. 247 (1953) ......................................................................... 1

*Whole Woman's Health v. Jackson*,
  595 U.S. 30 (2021) ................................................................... passim

*Worth v. Jacobson*,
  108 F.4th 677 (8th Cir. 2024) ...................................................... 5, 6

**State Statutes**

Minn. Stat. § 8.31 ............................................................................. 12

Minn. Stat. § 175.20........................................................................... 4

Minn. Stat. § 177.27, subds. 4–7......................................................... 4

Minn. Stat. § 181.1721................................................................. 12, 13

Minn. Stat. § 181.531........................................................................... 4

Minn. Stat. § 181.531, subd. 2 .......................................................... 12

Minn. Stat. § 181.531, subd. 3(a)......................................................... 4

Minn. Stat. § 181.531, subd. 3(b) ............................................................... 4

Tex. Health & Safety Code Ann. §§ 171.207–211 ................................... 12

**Federal Rules**

Fed. R. App. P. 32(a)(5) ............................................................................ 18

Fed. R. App. P. 32(a)(6) ............................................................................ 18

Fed. R. App. P. 40 ..................................................................................... 18

Fed. R. App. P. 40(a) ................................................................................... 1

Fed. R. App. P 40(d)(3)(a) ....................................................................... 18

Fed. R. Civ. P. 12(b)(1) .................................................................. 1, 2, 7, 9

Fed. R. Civ. P. 12(b)(6) ................................................................. 9, 10, 16

**Other Authorities**

8th Cir. IOP § IV.D .................................................................................... 1

# INTRODUCTION

The Panel Majority applied settled Eighth Circuit precedent to a pre-enforcement challenge to Minnesota's Employer-Sponsored Meetings or Communications Act. Deciding a Rule 12(b)(1) factual attack, the Panel answered *Ex parte Young*'s questions for each defendant—Governor Walz, Attorney General Ellison, and Commissioner Blissenbach: (1) Governor Walz's and Commissioner Blissenbach's ties are too administrative or ministerial to supply "some connection" with enforcement, and (2) Attorney General Ellison's uncontroverted declaration shows no present intent to enforce, foreclosing *Young*. (Op. 3–10.)

Appellees claim error, but their refrain—"either we have First Amendment rights or we don't"—confuses merits with jurisdiction. The Constitution guarantees rights, including the First *and* Eleventh Amendments. But it does not guarantee federal jurisdiction to hear a challenge under the First when doing so would violate the Eleventh. Applying settled precedent to the record, the Panel Majority declined Appellees' invitation to do just that.

With no circuit conflict, no exceptionally important question, and the Panel Majority's decision applying settled Eighth Circuit law to an undisputed record, Appellees' petition seeking the disfavored remedy of en banc review should be denied. 8th Cir. IOP IV.D (quoting *W. Pac. R.R. Corp. v. W. Pac. R.R. Co.*, 345 U.S. 247, 262–63 (1953)); Fed. R. App. P. 40(a).

1

none**ARGUMENT**

**I.** **THE PANEL MAJORITY CORRECTLY APPLIED *EX PARTE YOUNG* TO UNDISPUTED FACTS.**[1]

Appellees object to Minnesota's Employer-Sponsored Meetings or Communications Act and sued three Minnesota officials in federal court to enjoin it. The question before the Panel was whether Appellees can invoke *Young*'s exception when the officials sued are unconnected to enforcement or deny any present intent to enforce the Act. The Panel Majority correctly rejected Appellees' effort and reversed the district court.

**A.** **The Panel Majority's Analysis of *Young*'s First Element Follows Established Precedent.**

**1.** **Governor Walz Lacks Any Enforcement Connection.**

To be a proper defendant under *Young*, a state official must have a method of enforcing the challenged law. Gubernatorial appointment, removal, and generalized "take care" authorities are not methods of enforcement under *Young*. *Church v. Missouri*, 913 F.3d 736, 750 (8th Cir. 2019) (governor's appointment power "does not give [him] some connection" to enforcement). Appellees try to cabin *Church* by saying that, unlike there, Governor Walz can remove the Commissioner, giving him

---

[1] Two weeks ago, a district court outside this Circuit took followed the Panel Majority's decision and dismissed a mirror-image, pre-enforcement challenge to Illinois's captive-audience law on a Rule 12(b)(1) factual record, crediting a state official's declaration disavowing authority or intent to investigate. *Ill. Policy Inst. v. Flanagan*, No. 24-cv-06976, 2025 WL 2900516, at *6 (N.D. Ill. Sept. 30, 2025).

a tool to ensure the Act's zealous enforcement. (Pet. 9.) The Panel Majority correctly found "no legally significant distinction" between appointment and removal because they are administrative acts too far removed from enforcement. (Op. 2.) Governors appoint scores of officials to carry out state law. If that alone created a *Young* connection, the Eleventh Amendment would become a dead letter.

This Court's recent decision in *Bio Gen LLC v. Sanders* confirms the point. 142 F.4th 591, 605 (8th Cir. 2025).[2] Relying on *Church*, this Court concluded that the Arkansas Governor's ability to "control and direct[]" agencies that administer the challenged law was not "some connection" to make her a proper *Young* defendant. *Id*. Appellees make the same argument this Court rejected in *Bio Gen*. (Pet. 10.) The Governor's ability to "control and direct[]" appointees exists because he can remove officials who might resist his control or direction. But *Bio Gen* reaffirms that such supervisory authority is not enough, and plaintiffs "must identify a method of enforcement that the officer has the authority to wield," otherwise it is just an impermissible attempt to make the state a party. *Id*. Here, Governor Walz has no authority under the Act to wield, so the court lacks jurisdiction. (Op. 4–5.)

A governor's appointment and removal powers are general, supervisory and administrative; they are not concrete enforcement tools required by *Young*.

---

[2] *Bio Gen* was filed June 24, 2025, about two weeks after this Panel heard argument.

## 2. Commissioner Blissenbach Lacks Any Enforcement Connection.

*Young*'s first element turns on whether the official has tools to enforce the challenged law and whether those tools cause the plaintiff's injury. Commissioner Blissenbach's lack of enforcement tools is clear from the statutory structure. Minnesota Statutes section 175.20 grants Commissioner Blissenbach discretionary investigative power over five chapters of Minnesota law, but the Legislature only gave her coercive enforcement tools for specific statutes—and the Act (Minn. Stat. § 181.531) is not one of them. Minn. Stat. § 177.27, subds. 4–7.

Commissioner Blissenbach's sole responsibility under the Act is to create an educational poster. Minn. Stat. § 181.531, subd. 3(a). That's it. She does not enforce its posting requirement. Minn. Stat. § 181.531, subd. 3(b). Commissioner Blissenbach's power here is informational: she has no compulsory process, no gatekeeping function, and no sanction to compel compliance. The Panel Majority relied on the statutory structure's plain language, correctly holding she lacks the enforcement connection *Young* requires. (Op. 5–7.) Their text-first approach aligns with this Court's insistence that "some connection" means an actual enforcement *method*, not general oversight. *Church*, 913 F.3d at 749.

Implicit in *Young*'s "some connection" requirement is a causal tie between a defendant's power to act so an injunction against it can prevent the plaintiff's injury. (Op. 4–5.) But an injunction against Commissioner Blissenbach would not stop

private suits, or suits by the Attorney General should his enforcement posture change, or his successor takes a different approach. Where the plaintiff's alleged injury flows through a private right of action or another official's discretion, *Young* does not apply. *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 958 (8th Cir. 2015).

### a. Commissioner Blissenbach's Educational Poster is Not "Some Connection" to the Act's Enforcement.[3]

Commissioner Blissenbach's creation of an educational poster about the Act does not change the answer. The Panel Majority correctly held that "the State's enforcement machinery does not benefit from development of the poster," so Commissioner Blissenbach's educational activity does not meet *Young*'s "some connection" requirement. (Op. 5–6.)

Appellees misread *Worth* by recasting the Commissioner's task as mere paperwork. (Pet. 11.) In *Worth v. Jacobson*, this Court did not find "making application forms available on the internet" sufficient, it involved a statutory mandate for the commissioner to run the licensing system and capture applicant dates of birth, which was "key" to Minnesota's ability to deny handgun permits to

---

[3] Appellees argue that Commissioner Blissenbach's educational poster "does enable information enforcement to flow back to the State," claiming this meets *Young*'s first element. (Pet. 11-12.) Whatever "information enforcement" might actually be, the point is forfeited: it was not presented to the district court or the Panel, and this Court does not consider arguments raised for the first time in a petition for rehearing en banc. *In re Hen House Interstate, Inc.*, 177 F.3d 719, 724 (8th Cir. 1999) (en banc).

18-to-20-year-olds. 108 F.4th 677, 684, n.3 (8th Cir. 2024). By contrast, creating an educational poster does not enforce the Act, even if it hypothetically leads third parties to bring suits. (Op. 5–6); *Calzone v. Hawley*, 866 F.3d 866, 870 (8th Cir. 2017) (enjoining attorney general would not prevent the highway patrol's complained of vehicle inspections). Commissioner Blissenbach cannot require third parties to commence suits to enforce the Act, or prevent them from doing so. Any injunction against Commissioner Blissenbach would be illusory. The Panel Majority correctly distinguished *Worth*.

### b. The Panel Correctly Distinguished *Jones v. Jegley*.

Appellees' contention that the Panel Majority misread *Jones v. Jegley,* 947 F.3d 1100 (8th Cir. 2020), is also mistaken. (Pet. 12.) *Jones* found a "strong enough" enforcement connection for a state ethics commission to be sued where it could independently investigate, levy fines, and refer violators for prosecution. 947 F.3d at 1103 n.2. By contrast, the Panel Majority recognized that Commissioner Blissenbach's general, non-specific investigatory powers under many chapters of Minnesota law, absent the enforcement tools she has for other laws, did not give her "some connection" to the Act's enforcement. (Op. 6–7.) Unlike the *Jones* Ethics Commission—whose investigative power was backed by compulsory process and coercive consequences—Commissioner Blissenbach's investigative authority

relative to the Act is at most noncoercive information-gathering, with no sanctions or other enforcement teeth. For the Panel Majority, that made all the difference. (*Id.*)

Read properly, *Jones* and the Panel Majority stand together. When officials possess direct enforcement tools: investigative authority coupled with the power to independently levy fines and refer matters for prosecution, they operationalize and enforce the challenged law, and *Young*'s first element can be met. When officials have no such tools, are assigned ministerial tasks like education, or have disclaimed present enforcement in a factual record, *Young*'s first element is not met. The Panel Majority's conclusion that Commissioner Blissenbach lacks "some connection" with the Act's enforcement aligns with this Court's decision in *Jones v. Jegley*. Further review by this Court is not warranted.

### c. Even Assuming "Some Connection," Commissioner Blissenbach's Sworn Disavowals Defeat *Young*'s Second Element.

Even if Appellees could satisfy *Young*'s first element as to Commissioner Blissenbach, they still fail at the second element. Commissioner Blissenbach submitted two sworn declarations stating she has not enforced—and does not intend to enforce—the Act against Appellees.[4] Appellees offered no contrary evidence. On a Rule 12(b)(1) factual attack, that ends the inquiry: without a credible, imminent threat, *Young* does not apply. The same reasoning that requires Attorney General

---

[4] App. 29–31; R. Doc. 19, at 1–3. App. 143–145; R. Doc. 50, at 1–3.

Ellison's dismissal necessarily requires Commissioner Blissenbach's dismissal. *See* Section I(B), *infra*.; *Dace v. ACF Indus., Inc.*, 728 F.2d 976, 978 (8th Cir. 1984) (denying en banc review of issue that would not change the outcome of the case). Appellees' petition should be denied.

**B.     The Panel Majority's Analysis of *Young*'s Second Element Aligns with Established Precedent.**

The Panel Majority correctly applied *Young*'s two-part test: an official must have "some connection" to enforcement and must also "threaten and be about to commence proceedings." (Op. 3, 8–10.) As this Court recently reiterated: absent a real likelihood of enforcement, the Eleventh Amendment bars suit. *Filyaw v. Corsi*, 150 F.4th 936, 945 (8th Cir. 2025).

**1.     The Panel Properly Credited Attorney General Ellison's Disavowal and Found No Enforcement Threat.**

The Panel Majority applied this Court's "proper standard" and found that Attorney General Ellison's uncontroverted declaration "establishes his unwillingness to exercise his ability to prosecute" Appellees under the Act, defeating *Young*'s second element. (Op. 8–9.) Appellees' failure to meet *Young*'s second element preserved the Attorney General's sovereign immunity and barred federal jurisdiction. (*Id*.)

This result follows this Court's settled approach to indistinguishable records in pre-enforcement First Amendment suits. *Minn. RFL Republican Farmer-Labor*

*Caucus v. Freeman*, 33 F.4th 985, 992 (8th Cir. 2022) ("[T]he county officials' affidavits all show that they have not enforced or threatened to enforce [the challenged law]. Therefore the *Ex parte Young* exception to Eleventh Immunity is inapplicable."); *281 Care Comm. v. Arneson* (*Care Committee II*), 766 F.3d 774, 797 (8th Cir. 2014) (same)); *Minn. RFL Republican Farmer Lab. Caucus v. Moriarty*, 108 F.4th 1035, 1037–38 (8th Cir. 2024) (same).[5]

On a Rule 12(b)(1) factual attack, this Court requires proof, not plausibility. Under this fact-sensitive approach, the Panel Majority found the only competent evidence—Attorney General Ellison's sworn disavowal—disproves imminent enforcement. (Op. 9–10.) This procedural posture distinguishes every Rule 12(b)(6) case Appellees cite, where plausibility—not proof—carries the day.[6] *Becker v. N. Dakota Univ. Sys.*, 112 F.4th 592, 596, n.2 (8th Cir. 2024) (Stras, J.) (citing *Jones v. Jegley*, finding standing under Rule 12(b)(6), but confirming propriety of Rule 12(b)(1) factual attack to test jurisdictional facts on remand).

---

[5] This Court and the Supreme Court have declined to reconsider this precedent multiple times. *See Minn. RFL Republican Farmer-Labor Caucus v. Moriarty*, 108 F.4th 1035 (8th Cir. 2024), *reh'g and reh'g en banc denied, Minn. RFL Republican Farmer-Labor Caucus v. Moriarty*, No. 23-1563, 2024 WL 3929990, at *1 (8th Cir. Aug. 26, 2024) *cert. denied*, 145 S. Ct. 549 (2024); *Minn. RFL Republican Farmer-Labor Caucus v. Freeman*, 33 F.4th 985 (8th Cir. 2022), *cert. denied sub nom. Christian Action League of Minn. v. Freeman*, 143 S. Ct. 304 (2022); *281 Care Comm. v. Arneson*, 766 F.3d 774, 797 (8th Cir. 2014), *reh'g and reh'g en banc denied*, (8th Cir. Oct. 2, 2014), *cert. denied*, 575 U.S. 912 (2015).

[6] (Pet. 15.)

This procedural distinction is not new. Judge Loken described it two decades ago:

> At this stage of the proceedings, we agree with the district court that this statutory authority creates a sufficient connection with the enforcement of § 188.039 to make the Attorney General a *potentially* proper party for injunctive relief, in which case he would be within the scope of the *Ex parte Young* exception to Eleventh Amendment immunity. However, as neither the Governor nor any state trial court has directed the Attorney General to take action to enforce § 188.039, Planned Parenthood has shown no threat of irreparable injury by the Attorney General.

*Reprod. Health Servs. of Planned Parenthood of St. Louis Region, Inc. v. Nixon*, 428 F.3d 1139, 1145 (8th Cir. 2005) (emphasis in original).

This Court's standard is consistent with *Whole Woman's Health*, where the majority "agree[d] . . . in principle" that *Young* applies only when a defendant official "threatens and is about to commence proceedings" because "the prospect of state suit must be imminent," but disagreed that it must be shown under Rule 12(b)(6). *Whole Woman's Health v. Jackson*, 595 U.S. 30, 46–47 (2021); *Id*. at 56–57 (Thomas, J. concurring in part and dissenting in part); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 382–83 (1992) (holding plaintiffs in a pre-enforcement, "first strike" challenge against a potential state suit must show imminent threat of enforcement to supply necessary irreparable injury for equitable relief). Appellees disregard *Young*'s 'about to commence proceedings' requirement and collapse the doctrine into a single inquiry that ignores the procedural posture. (Op. 9 & n.1.) Their

overreading of *Whole Woman's Health* has been turned aside by the only court of appeals to consider it, and the Panel Majority correctly dismissed it.[7]

Appellees failed to meet their burden to prove that Attorney General Ellison had ever enforced the Act or threatened to enforce it against them. Appellees' operative unverified complaint was not entitled to any presumption of truth, yet they relied on nothing more than those allegations. *Jones v. United States*, 727 F.3d 844, 846 (8th Cir. 2013) ("The party seeking to invoke federal jurisdiction … carries the burden [of proof], which may not be shifted to another party."). Attorney General Ellison's declaration was undisputed. (Appellants' Br. at 9–10.) Accordingly, Appellees are no different than the plaintiffs in *Nixon*, who failed to present evidence that Missouri's Attorney General was directed to enforce the law. 428 F.3d at 1145. Without it, they could not prove *Young*'s second element, and their bid for a preliminary injunction was barred by the Eleventh Amendment. *Id*. The Panel Majority faithfully applied this Court's precedent to reach the same outcome here.[8]

---

[7] Appellees' interpretation that *Whole Woman's Health* eliminated *Young*'s second element has been rejected by the only other circuit court to consider it—the court that decided *Whole Woman's Health* on remand. *Mi Familia Vota v. Ogg*, 105 F.4th 313, 327 (5th Cir. 2024).

[8] Appellees' incomplete quotation of Attorney General Ellison's press release informing Minnesotans about the Panel Majority's decision underscores the lack of any limiting principle for their position. (Pet. 17–18, n.19.) If an Attorney General's duty to defend a statute's constitutionality is not a *Young* "connection," then (Footnote Continued on Next Page.)

Lacking contrary evidence, Appellees attack Attorney General Ellison's sworn disavowal, claiming it cannot override a mandatory prosecution duty under Minnesota Statutes section 8.31. (Pet. 13.) Even assuming Section 8.31 eliminates the Attorney General's prosecutorial discretion,[9] Appellees do not dispute that Attorney General Ellison's authority to enforce the Act they are challenging is discretionary and arises under a different law. (Op. 6–7, citing Minn. Stat. § 181.1721.)

Attorney General Ellison declared that he has never enforced the Act and has no present intent to start. No contrary evidence exists, and *Young* cannot apply.

## II.   THIS CASE IS NOT EXCEPTIONALLY IMPORTANT.

Appellees' protestations to the contrary, this case is not exceptionally important. Unlike the Texas law at issue in *Whole Woman's Health*, the Act does not prohibit public enforcement or erect myriad procedural hurdles to those seeking to defend themselves against it or challenge its constitutionality; it simply provides aggrieved individuals with a private right of action. *Compare* Minn. Stat. § 181.531, subd. 2 *with* Tex. Health & Safety Code Ann. §§ 171.207–211. Moreover, the

---

announcing his successful discharge of that duty cannot be a "threat to enforce." *Digital Recognition Network,* 803 F.3d at 962.

[9] It does not. (Appellants' Br. 18 n.47; Reply Br. 24.) Moreover, federal courts cannot order state officials into state-law compliance, and Appellees cannot bootstrap alleged state law violations into federal jurisdiction. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

Minnesota Legislature *did* provide a state official (the Attorney General) with authority to enforce the Act. *See* Minn. Stat. § 181.1721. But this power is discretionary, and in exercising his prosecutorial discretion, Attorney General Ellison has disavowed a present intent to enforce the Act against Appellees.

The Panel Majority did not "reopen" a loophole closed in *Whole Woman's Health*, nor did it leave Appellees "[n]o option … to preemptively challenge a statute['s]" constitutionality. (Pet. 16.) Even if that were true, the Supreme Court "has never recognized an unqualified right to pre-enforcement review of constitutional claims in federal court." *Whole Woman's Health*, 595 U.S. at 537–38. Appellees *chose* to bring this suit in federal court—a court of limited jurisdiction and even narrower exceptions to sovereign immunity. But "those seeking to challenge the constitutionality of state laws are not always able to pick and choose the timing and preferred forum for their arguments." *Id*.; *see also Pennhurst*, 465 U.S. at 123 ("That a litigant's choice of forum is reduced [by application of the Eleventh Amendment] has long been understood to be a part of the tension inherent in our system of federalism.")

Still, Appellees can bring a pre-enforcement constitutional challenge in Minnesota state courts. They can sue if they are actually threatened with enforcement by Minnesota's Attorney General. Or they can raise the Act's constitutionality as an affirmative defense in state or federal court, if an individual

sues them under the Act's private right of action. But Appellees cannot claim "chilled speech" on hypothetical facts and demand a federal court forum without overcoming sovereign immunity. Here, they failed to do so. Consequently, this case cannot proceed in federal court.

## A.     There is No Intra-Circuit Conflict.

Appellees claim the Panel Majority creates an intra-circuit conflicted because this Court does not require plaintiffs to risk prosecution before challenging state law under the First Amendment. (Pet. 15.)[10] As *Jones v. Jegley* explains, this Court finds that subjective claims of "chilled speech" are enough to confer Article III standing in pre-enforcement First Amendment challenges. 947 F.3d at 1104; *see Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 699–700 (8th Cir. 2021) (describing Article III standing as "lenient" and "forgiving" in pre-enforcement First Amendment challenges). The Panel Majority did not hold otherwise. But Article III is just one piece of the jurisdictional puzzle, and though similar to *Young*'s analysis, "they are distinct jurisdictional requirements." *Duit Const. Co. v. Bennett*, 796 F.3d 938, 940–41 (8th Cir. 2015) (Loken, J.) (citations omitted). Unlike Article III standing analysis, sovereign immunity makes no exception for the

---

[10] Article III standing is the "irreducible constitutional minimum" for federal jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). But "the judicial authority in Article III is limited by [state] sovereignty." *Blatchford v. Native Vill. of Noatak & Circle Vill.*, 501 U.S. 775, 779 (1991).

First Amendment, treating it just like any other constitutional right. *Whole Woman's Health*, 595 U.S. at 50. Therefore, Appellees fail to identify any intra-circuit conflict.

## B.     There is No Circuit-Split.[11]

Appellees' search for a circuit-split is similarly fruitless. Appellees point to *K.P. v. LeBlanc*, contending that mid-litigation disavowals to enforce are mere gamesmanship this Court should not endorse. (Pet. 14–15.) But *LeBlanc* addressed whether the plaintiff had sufficiently alleged an "ongoing" violation of federal law— a different *Young* requirement. 729 F.3d 427, 439 (5th Cir. 2013). *LeBlanc* did not address whether a particular official threatened imminent enforcement under *Young*'s second element, which is the issue here.

And *LeBlanc*'s facts cut the other way. There, the state board *had* been investigating the plaintiff under the challenged law when plaintiff commenced litigation. *Id*. at 432–35. Contemporaneous state enforcement against that specific plaintiff was enough to show an "ongoing" threat of future violations, despite the state's mid-litigation closure of its investigation. *Id*. at 439–40.

---

[11] On October 10, 2025, Appellees notified this Court of a recent decision granting a preliminary injunction against California's captive audience ban. *Cal. Chamber of Com. v. Bonta*, No. 2:24-CV-03798-DJC, 2025 WL 2779355, at *1 (E.D. Cal. Sept. 30, 2025). *Bonta* did not address sovereign immunity. Appellees' earnest belief that the Act is obviously unconstitutional is not sufficient to dispense with *Young*'s requirements. *Whole Woman's Health*, 595 U.S. at 50 ("[T]he 'chilling effect' associated with a potentially unconstitutional law being 'on the books' is insufficient to 'justify federal intervention' in a pre-enforcement suit.").

In contrast, Minnesota officials have never enforced the Act against anyone, and disavow any present intent to do so—placing this case squarely within *Freeman*'s holding that disavowal, coupled with no history of enforcement, defeats the narrow *Young* exception. 33 F.4th at 992; *Care Committee II*, 766 F.3d at 797 (finding attorney general's sworn disavowals defeated *Young*'s exception). Here, no past enforcement and no present threat of enforcement means no *Young* exception. *LeBlanc* featured an actual, demonstrated enforcement history against the very plaintiff challenging the law's constitutionality, which is completely absent here.

Appellees' reference to the Sixth Circuit's decision in *Universal Life Church Monastery Storehouse v. Nabors* is distinguishable because, under Rule 12(b)(6), the procedural posture limited the court's analysis to *Young*'s first element. (Pet. 14) (citing 35 F.4th 1021, 1041 (6th Cir. 2022)). This Court similarly limits its analysis to *Young*'s first element under Rule 12(b)(6). *Nixon*, 428 F.3d at 1145.

Finally, the Ninth Circuit decision, *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937 (9th Cir. 2013), is largely a dissertation on how the Constitution's dormant Commerce Clause limits state regulation of foie gras. (Pet. 14.) Its sovereign immunity analysis has never been cited beyond the Ninth Circuit. It creates no conflict with this Court's settled *Young* doctrine.

Appellees' effort to create a conflict between the Panel Majority's decision and authoritative decisions of other courts of appeal falls flat. Their petition for rehearing should be denied.

## CONCLUSION

The Panel Majority applied controlling precedent to undisputed facts. The decision aligns with over a century of *Ex parte Young* case law from this Court and the U.S. Supreme Court. Appellees' Petition fails to justify their request for the extraordinary relief of en banc review. Appellants respectfully request that the Petition for rehearing en banc be denied.

Dated: October 14, 2025

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

/s/ Nick Pladson
NICK PLADSON (MN #0388148)
BENJAMIN HARRINGA (MN #0399254)
Assistant Attorneys General

445 Minnesota Street, Suite 600
St. Paul, MN 55101-2131
(651) 300-7083 (Voice)
(651) 282-5832 (Fax)
nick.pladson@ag.state.mn.us
benjamin.harringa@ag.state.mn.us

ATTORNEYS FOR DEFENDANTS-
APPELLANTS

# CERTIFICATE OF COMPLIANCE

Under Rule 40 of the Federal Rules of Appellate Procedure, the foregoing response contains 3,886 words, excluding the parts of the brief exempted by Rule 32(f), in compliance with the 3,900 word limit for responses to petitions for hearing under Fed. R. App. P. 40(d)(3)(a).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14 pt Times New Roman font.

The undersigned, on behalf of the party filing and serving this response, certifies that the response has been scanned for viruses and that it is virus-free.

Dated: October 14, 2025

/s/ Nick Pladson
NICK PLADSON
Assistant Attorney General
(MN #0388148)

**CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the Next-Gen CM/ECF system. I certify that all participants in the case are registered Next Gen CM/ECF users.

Dated: October 14, 2025           /s/ Nick Pladson
                                   Nick Pladson
                                   Assistant Attorney General
                                   (MN #0388148)